2005-NMSC-025

119 P.3d 151

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Miguel O. GONZALES and Michael Gonzales, Jr., Defendants–Respondents.**

**No. 28,645.**

Supreme Court of New Mexico.

Aug. 4, 2005.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Petitioner.

Law Office of Billy R. Blackburn, Billy R. Blackburn, Mark Fine, Albuquerque, NM, Law Office of Jose R. Coronado, Jose R. Coronado, Las Cruces, NM, for Respondents.

## OPINION

MINZNER, Justice.

{1} The State appeals from an unpublished decision of the Court of Appeals, *State v. Gonzales*, Nos. 22,580/22,612 (N.M.Ct.App. Apr. 16, 2004), affirming the district court's order on Defendants' motion disqualifying the Office of District Attorney for the Third Judicial District. The State has argued that the Court of Appeals erred in reviewing the district court's order for an abuse of discretion and that the district court erred in disqualifying the entire office on the basis of an appearance of impropriety. We conclude an immediate appeal was appropriate and clarify the appropriate standard of appellate review. We hold that a prosecutor may be disqualified when there is a factual basis for determining that he or she has a bias that might influence his or her professional judgment. We also hold that disqualification may be imputed to the office when there is an appearance of impropriety in permitting anyone else in the office to proceed. On the facts of this case, the district court did not err in disqualifying the entire office because both requirements were met. We affirm.

### I

{2} On November 1, 1999, Defendants, who are father and son, were indicted sepa-

rately. The indictments subsequently were joined for trial. In December, 2000, Defendant Michael Gonzales, Jr., moved the district court for an order instructing District Attorney Martinez to produce exculpatory evidence. In January, 2001, his father, Defendant Miguel O. Gonzales, moved for a similar order. Before these motions were resolved, at a status conference, the court entered an order changing venue on a motion by Defendants in which the State had concurred. At that time a trial on the merits was scheduled for August 20, 2001 in Albuquerque. The parties anticipated a four-week trial. Subsequently, the court entered orders granting in part and denying in part Defendants' discovery motions. In May, Defendants again moved for an order compelling discovery.

{3} In June, 2001, Defendant Michael Gonzales moved to disqualify the entire Third Judicial District Attorney's Office. The next day his father moved to adopt the motion, and a week later he filed supplemental grounds on behalf of himself and his son. Defendants initially alleged an appearance of impropriety, a conflict of interest, or an appearance of a conflict of interest in the District Attorney's continued prosecution. As supplemental grounds, Defendants alleged the District Attorney failed to produce exculpatory evidence. On July 19 and 20, 2001, the district court held an evidentiary hearing. The testimony at the hearing conflicted on several important points. Other points were undisputed.

{4} It is undisputed that the District Attorney Martinez formerly worked as a prosecutor in the Office of the District Attorney for the Third Judicial District from October, 1986, to August, 1993. During at least part of this time, Defendant Miguel Gonzales worked as an investigator in the office. After a new district attorney was elected, Martinez was fired. Subsequently, in 1996, she successfully ran against the incumbent District Attorney. Defendants supported her opponent in the 1996 election.

{5} The nature of the relationship between Martinez and Defendant Miguel Gonzales from 1986 to 1993 was disputed at the hearing. Martinez testified that she seldom worked with him and, although she was dissatisfied with his work, she did not hate or dislike him. Other witnesses who had worked in the office of the Third Judicial District, however, testified that she spoke very disparagingly of him and that she strongly disliked him.

{6} It is also undisputed that in 1996 Defendant Michael Gonzales worked in the office as an investigator and that he and the District Attorney–Elect Martinez met before she took office in January, 1997. He continued working at the office until August 7, 1998, when he resigned.

{7} The basis for his decision to resign and the role of the District Attorney in that decision was the subject of conflicting testimony. She testified that he repeatedly worked a second job during the hours he was supposed to be working for her, that she attempted to suspend him for misconduct, and that, when it was determined that she had not followed the correct procedure for suspension, he later resigned voluntarily. He testified that she forced him to resign by making his job intolerable. A witness, who had supported her in the 1996 election and had been an assistant district attorney for the Third Judicial District, testified that he heard her say before the election that Defendant Michael Gonzales would be fired or forced out of the office if she won the election. The same witness testified he believed that is what had happened. On cross-examination, Martinez admitted telling supporters that some people would lose their jobs if she won.

{8} The relationship between Defendant Michael Gonzales and Martinez also was the subject of dispute. She testified that she did not like or dislike him and that he was likeable. He testified at one time they were on good terms. The same witness who testified that he believed the defendant had been forced to retire testified that he had heard her speak very disparagingly of him.

{9} It is undisputed that Defendant Michael Gonzales was employed by Martinez when the investigation into the crimes for which he and his father were indicted began. About the time he left the office, she became

aware of the investigation. Subsequently, it became clear that Defendants would not be prosecuted by the United States Attorney in federal court. It is unclear from the record when it became clear that prosecution would occur, if at all, in state court. Martinez testified that she participated in the decision to prosecute Defendants and that there was no attempt to screen her from subsequent decisions related to Defendants' prosecutions. It is also undisputed that Defendant Michael Gonzales notified the District Attorney when he resigned in 1998 that he was considering a civil rights action against one or more members of her office. There was evidence that the office initiated civil abatement proceedings against a business owned by Defendants the day after a plea offer in the matter expired and had failed to provide Defendants exculpatory evidence in a timely fashion. There was evidence that the District Attorney had forwarded a number of other investigations and prosecutions to the offices of other district attorneys to avoid a conflict, including a prior prosecution of Defendant Michael Gonzales that was subsequently dismissed and the prosecution of her 1996 and 2000 opponents.

{10} At the close of testimony, the district court ruled from the bench that the evidence justified disqualifying the entire office. In a subsequent written order the judge noted the political significance of the matter, evidence that Defendant Michael Gonzales had been treated in a "bad faith" manner during his employment, that the office had been late in providing discovery, and that members of the office had acted overzealously.

{11} The Court of Appeals concluded that the district court had a factual basis for its conclusion and properly relied upon *State v. Pennington*, 115 N.M. 372, 851 P.2d 494 (Ct. App.1993). *Gonzales*, Nos. 22,580/22,612, slip op. at 4. The Court of Appeals reviewed, pursuant to *Pennington*, for an abuse of discretion and concluded that the district court did not err in disqualifying the entire office. *Id.* at 7. Judge Bustamante, concurring specially, indicated that the district court's order lacked clarity but the record supported a determination that a "corrosive political atmosphere surround[ed] these pros-

ecutions" and a conclusion, to which an appellate court should defer, that under the circumstances of this case disqualification of the entire office was appropriate "for the good of the community." *Id.* at 8.

{12} The State petitioned this Court for certiorari, which we granted, and we requested both briefing and oral argument. On certiorari the State has argued that a court should disqualify an entire office only when an equally important constitutional interest is at stake for a defendant. The State reasons that disqualification of an entire office implicates and on these facts violates the New Mexico Constitution by infringing upon the right of Dona Ana County voters to elect a district attorney and by intruding upon the separate and distinct powers of the executive branch. The State asks us to recognize that in light of these important interests we ought to review de novo the order disqualifying the office of the district attorney. In addition, the State argues that the district court's order contains insufficient grounds for disqualifying the entire office. In particular, the State argues that the court erred in referring to the political significance of the underlying case.

{13} We believe that the State's arguments require us to resolve two important issues. The first issue is the appropriate analysis when a defendant moves to disqualify a district attorney office. The second issue is whether the evidence in this case supported the district court's ruling. We address each of these issues in turn. Our discussion necessarily requires us to construe the district court's order, to determine the appropriate standard of appellate review, and to apply that standard to the evidence in the record. We address the State's other arguments in the course of discussing the two issues this appeal presents.

**II**

{14} We begin our discussion with New Mexico appellate cases that have reviewed trial court rulings disqualifying prosecutors. Most of our cases have arisen on the appeal of a defendant following conviction. Defendants have argued that the disqualification order was not final and not otherwise imme-

diately appealable. We address this argument in depth after a brief review of the cases.

**A**

{15} The leading New Mexico case is *Pennington*. In *Pennington*, the defendant appealed his conviction of child abuse resulting in death by a jury in a second trial after the first ended in a mistrial. 115 N.M. at 374, 851 P.2d at 496. An investigator for the Third Judicial District Attorney's Office had assisted the defendant in his defense at the first trial, and the District Attorney had prevented the investigator from working on the second trial. *Id.* Before the second trial, the district court had denied the defendant's motion to disqualify the entire office. *Id.* No one disputed that the investigator was disqualified; the issue in *Pennington* was whether the entire office was disqualified by imputation. The Court of Appeals rejected a per se rule that disqualification of a single member of the prosecution team was imputed to the entire office, concluding that disqualification of the entire office was a decision entrusted to the sound discretion of the trial court. *Id.* at 376–78, 851 P.2d at 498–500 (overruling *State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct.App.1974)). The trial court needed to determine on the facts of the specific case whether the entire office should be disqualified. The Court of Appeals held that the screening mechanisms put in place by the District Attorney's Office supported the conclusion that there was no appearance of impropriety that justified disqualification and affirmed the order denying disqualification.

{16} The most recent case is *State v. Barnett*, 1998–NMCA–105, 125 N.M. 739, 965 P.2d 323, in which the defendant appealed from the trial court's order denying his motion to withdraw his plea. The defendant had pled guilty, although he, his attorney, and the prosecutor knew the prosecutor had previously represented the defendant in criminal proceedings that resulted in convictions available to enhance his sentence following the plea. *Id.* ¶¶ 2–6. Relying on the Rules of Professional Conduct, *id.* ¶¶ 15, 18, 21, the Court of Appeals determined that

there was a substantial relationship between the present charges and the prior convictions, *id.* ¶ 23, which resulted in a conflict of interest in the prosecutor's involvement in the defendant's current plea bargaining. The Court of Appeals concluded that had the defendant raised the issue prior to his plea, the conflict would have been a basis for disqualifying the prosecutor. *Id.* ¶ 24. Determining that the performance of defense counsel was deficient, because she had not pursued disqualification of the prosecutor, *id.* ¶ 30, the Court of Appeals remanded the matter to the trial court to determine whether the defendant was prejudiced. *Id.* ¶ 33.

{17} In *State v. Armijo*, 118 N.M. 802, 887 P.2d 1269 (Ct.App.1994), the Court of Appeals addressed the issue of disqualification in the context of an interlocutory order, which it reversed. The district court had disqualified the Attorney General's Office, *id.* at 804, 887 P.2d at 1271, and also quashed an indictment arising out of the defendant's conduct as Executive Director of the New Mexico Public School Insurance Authority. The Court of Appeals concluded, in part, that there was insufficient evidence of bias to support disqualification. *Id.* at 816–17, 887 P.2d at 1283–84. The only evidence of bias was the defendant's testimony and the existence of an adversarial relationship between the defendant and the Attorney General's Office. The Court noted "the importance of appearances in the criminal justice system," *id.* at 816, 887 P.2d at 1283, but indicated the convening of a grand jury to investigate the prosecutor, among others, ought not be disqualifying. *Id.* "[T]he opportunity for perversion of [the criminal justice] system renders it contrary to public policy for the mere convening of a grand jury to require" disqualification. *Id.*

{18} In addition, *Armijo* addressed the issue Defendants have raised in this appeal, which is whether an order disqualifying the prosecutor is a final order for purposes of appeal. The Court of Appeals held that the disqualification order was reviewable, in part because the same order quashed the indictment. *Id.* at 806, 887 P.2d at 1273. The Court of Appeals noted, however, that the State had a strong interest, which might not

be protected adequately unless immediate appellate review was available. In so doing, the Court of Appeals appeared to apply the collateral order doctrine.

{19} The State's arguments in this case echo the Court of Appeals' concern in *Armijo* about the importance of the State's interest. We believe the Court of Appeals correctly relied on the collateral order doctrine in reviewing the trial court's order disqualifying the Attorney General. *See United States v. Bolden*, 353 F.3d 870, 873–78 (10th Cir.2003) (discussing requirements for classifying an order as collateral for purposes of making an immediate appeal available). After researching the law of disqualification in other jurisdictions, we conclude that an immediate appeal from a similar order ordinarily is available. *See State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 908 P.2d 37 (Ct.App.1995); *People v. Palomo*, 31 P.3d 879 (Colo.2001); *State v. Snyder*, 256 La. 601, 237 So.2d 392 (1970). We also conclude we should follow that principle. We hold the collateral order doctrine applies on the facts of this case, in which the order disqualified the entire office.

1

{20} Although our cases have stated that an appellate court will review a trial court's order disqualifying a prosecutor for abuse of discretion, the standard of review actually is more complex. The State has argued in this appeal that at least part of our review should be de novo. We agree.

{21} Standards of review reflect the different functions trial and appellate courts serve. Disputes over historical facts are resolved by trial courts, and appellate courts give great deference to a trial court's factual determinations, reviewing to determine whether substantial evidence supports those determinations. Other questions may require a court to exercise " 'judgment about the values that animate legal principles,' " *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (quoting *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)), or " 'to consider abstract legal doctrines, to weigh underlying policy considerations, and to balance competing legal interests.' " *Attaway*, 117 N.M. at 145, 870 P.2d at 107 (quoting *McConney*, 728 F.2d at 1205). An appellate court should be prepared to review a trial court's resolution of such questions de novo. *Attaway*, 117 N.M. at 145–46, 870 P.2d at 107–08 (concluding that the mixed question of fact and law involved in determining exigent circumstances "lies closest in proximity to a conclusion of law" and "that such determinations are to be reviewed de novo"). This division of labor respects the particular strengths of each type of court and provides review intended to reduce the risk of error. *Attaway*, 117 N.M. at 145, 870 P.2d at 107.

{22} A trial court's final order often includes factual findings and legal conclusions. In reviewing such orders, appellate review will include deference to the findings and de novo review of conclusions. Non-final orders, however, may not include findings and conclusions. *See, e.g., Lewis ex rel. Lewis v. Samson*, 2001–NMSC–035, 131 N.M. 317, 35 P.3d 972 (reviewing rulings on discovery issues); *New Mexico Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, 127 N.M. 654, 986 P.2d 450 (reviewing a trial court's order denying attorney fees); *State v. Jason L.*, 2000–NMSC–018, 129 N.M. 119, 2 P.3d 856 (reviewing a trial court's order suppressing evidence). In some cases, we have described our review simply as a review for abuse of discretion, *see Lewis*, 2001–NMSC–035, ¶ 13, 131 N.M. 317, 35 P.3d 972, in others we have noted that we review de novo legal questions addressed in reviewing for abuse of discretion, *see New Mexico Right to Choose*, 1999–NMSC–028, ¶¶ 7–8, 127 N.M. 654, 986 P.2d 450, and in still others, we have noted that appellate review requires us to defer to implicit factual findings, including reasonable inferences that may have been drawn, and also to determine whether the law was applied correctly to those findings. *See Jason L.*, 2000–NMSC–018, ¶¶ 10–11, 129 N.M. 119, 2 P.3d 856.

{23} Our cases support the conclusion that the standard of review on appeal depends on the type of order from which an appeal has been taken as well as the type of error claimed. Appellate review for abuse of dis-

cretion often involves rulings in connection with discovery. *See Lewis,* 2001–NMSC–035, ¶ 5, 131 N.M. 317, 35 P.3d 972 (discussing rulings excluding witnesses and denying a modification of discovery deadlines); *Gonzales v. New Mexico Dep't of Health,* 2000–NMSC–029, ¶ 15, 129 N.M. 586, 11 P.3d 550 (discussing the choice of sanctions for abuse of discovery). In *Lewis,* we described our review as a review to determine whether the trial court's decision was " 'clearly untenable or contrary to logic and reason.' " 2001–NMSC–035, ¶ 13, 131 N.M. 317, 35 P.3d 972 (quoting *Newsome v. Farer,* 103 N.M. 415, 420, 708 P.2d 327, 332 (1985)). In *Gonzales,* we described our review as a review to determine if the facts on which the court relied " 'as a basis for the exercise of its discretion' " were " 'supported by substantial evidence.' " 2000–NMSC–029, ¶ 15, 129 N.M. 586, 11 P.3d 550 (quoting *Lopez v. Wal–Mart Stores, Inc.,* 108 N.M. 259, 260, 771 P.2d 192, 193 (Ct.App.1989)).

{24} In describing our review of disqualification orders as a review for abuse of discretion, we did not intend to overlook the mix of issues that such orders, like discovery rulings, might contain. In *Pennington,* for example, the question of whether the investigator's disqualification required disqualification of the office was a legal question. *See* 115 N.M. at 375–78, 851 P.2d at 497–500. There were factual and legal issues involved in evaluating the screening process the district attorney had put in place. *Id.* at 379–80, 851 P.2d at 501–02. The issue whether "any appearance of unfairness" was " 'dissipated' " was a determination the Court of Appeals indicated our cases entrusted to the trial court's discretion. *Id.* at 380, 851 P.2d at 502.

■ {25} Describing our appellate review of the disqualification order in this case as a review for abuse of discretion is an incomplete description of our task. *See generally Bolden,* 353 F.3d at 878 (stating that a court's factual determinations are reviewed for clear error and that the interpretation of ethical norms is reviewed de novo). Review for abuse of discretion may encompass a review for sufficient evidence, for legal error, as well as for an untenable choice between or

among alternatives. The nature of the order and the grounds on which the order is challenged will affect the standard of review. We now turn to the order in this case.

### 2

{26} Defendants alleged in their motion to disqualify that on the facts of this case prosecution by the District Attorney created a conflict of interest, an appearance of conflict, or an appearance of impropriety. The trial court apparently granted the motion in reliance upon *Pennington's* description of "circumstances in which concern about the appearance of impropriety would justify disqualification of the entire district attorney's staff." 115 N.M. at 376, 851 P.2d at 498. After listing some circumstances, the Court of Appeals concluded that "[w]e can rely on the district courts, in the exercise of their sound discretion, to disqualify an entire office whenever there are substantial reasons to doubt that internal screening procedures will protect the defendant." *Id.* at 377, 851 P.2d at 499. The trial court's order tracks some of the language the Court of Appeals used in listing illustrative circumstances.

{27} The Court of Appeals viewed the trial court's decision as consistent with *Pennington,* probably because the court's order relied on specific circumstances listed in that opinion and had a factual basis in the record. *See Gonzales,* Nos. 22,580/22,612, slip op. at 2–3. In granting Defendants' motion, the district court did not distinguish among members of the office. The court may have concluded that the District Attorney was disqualified and that her disqualification required the disqualification of the entire office. The court may have thought that *Pennington,* in its discussion of "the importance of appearances," had foreshadowed an alternative basis on which an entire office might be disqualified in the discretion of the trial judge. We need not decide whether *Pennington,* in a future case, might be expanded. We examine the order to determine whether it is consistent with *Pennington* as it was decided.

■ {28} Under *Pennington, id.* at 378–79, 851 P.2d at 500–01, a trial court should determine whether prosecution by a member

of the district attorney's office is inconsistent with a particular standard of professional conduct, justifying disqualification of that person. When doing so, the court should indicate the relevant standard and the evidence demonstrating a violation of the standard. At this stage, the defendant has the burden of going forward with evidence and the burden of persuasion. *Id.* at 378, 851 P.2d at 500. The standard may be relatively clear in some cases, as it was in *Pennington,* in which the disqualified person had previously worked for the defendant on the same case. *Id.* at 379, 851 P.2d at 501. In other cases, the standard may not be so clear.

{29} For example, a threatened or actual civil lawsuit would not be a sufficient ground for disqualification of a member of the prosecution team. Moreover, a defendant's conduct will almost never be sufficient to disqualify a member of the prosecution team, unless the crime being prosecuted was committed against the prosecuting attorney or someone else involved in the prosecution. *See* Allan L. Schwartz & Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused,* 42 A.L.R.5th 581 §§ 12–16 (1996 & Supp.2004); Annotation, *What Circumstances Justify Disqualification of Prosecutor in Federal Criminal Case,* 110 A.L.R. Fed. 523 § 7[a] (1996 & Supp.2005).

{30} After determining that a member of the district attorney's office is disqualified, then the court should determine whether the entire office is disqualified by imputation. *Pennington,* 115 N.M. at 379, 851 P.2d at 501. The State has the burden of proof, *id.,* when an appearance of unfairness or impropriety arises because a member of a district attorney's office is disqualified. *Id.* at 375–79, 851 P.2d at 497–501 (discussing the various ways that such an appearance might arise). However, screening mechanisms commonly utilized in public and private law offices may be effective to "dissipate" the appearance of unfairness, as they were in *Pennington. Id.* at 380, 851 P.2d at 502.

{31} *Pennington* did not articulate a rule for determining when an appearance of impropriety or unfairness requires disqualification of an entire office. Other jurisdictions have done so. The tests are quite similar. In considering vicarious disqualification, a court should determine "whether a reasonable person standing in the shoes of the defendant should be satisfied that his or her interests will not be compromised." *Romley,* 908 P.2d at 42. "[T]he ultimate goal is to maintain both public and individual confidence in the integrity of our judicial system." *Id.* at 43. In reviewing the trial court's decision, an appellate court should determine "whether the facts support the court's conclusion that the 'public would perceive continued prosecution by the district attorney's office . . . as improper and unjust, so as to undermine the credibility of the criminal process in our courts.' " *Palomo,* 31 P.3d at 882 (quoting *People v. County Court,* 854 P.2d 1341, 1344–45 (Col.App.1992)).

{32} While our cases do not support the State's argument that disqualification orders violate the New Mexico Constitution, we recognize that a disqualification order implicates important state interests. *See Armijo,* 118 N.M. at 816, 887 P.2d at 1283. The *Pennington* framework protects the State's interests in this case in various ways. First, it requires a determination that a member of the prosecution team should be disqualified, based on a particular standard of conduct. That determination helps ensure notice and facilitates compliance. Second, the burden of persuasion for this determination lies with the defendant, who must make an initial showing that satisfies the trial court there is an issue to be analyzed. In an appropriate case, the relevant facts will be placed in evidence. Third, the District Attorney has the opportunity to screen out disqualified members of the office and protect the public's interest while continuing with the prosecution through other members of the office. The district court's discretion can be exercised after the parties have had an adequate opportunity to inform the court of the relevant facts and argue the applicable law.

{33} We believe it is appropriate to construe the district court order in this case

as consistent with *Pennington*. It is susceptible to that construction, and the parties have based their arguments on *Pennington*. In an appropriate case, if we were concerned that the trial court might have made a different decision had it applied the correct standard, we might remand for a determination under the standard articulated. *See State v. Ferguson*, 111 N.M. 191, 197, 803 P.2d 676, 682 (Ct.App.1990) (Hartz, J., dissenting) (reasoning that a remand is appropriate when the trial court "has not articulated its basis for decision in sufficient detail to give us comfort that it applied the proper legal standard in exercising its discretion"). In this case, we believe the order provides sufficient detail to permit our construction. We construe the order as disqualifying the entire office because the District Attorney was disqualified, her participation created an appearance of impropriety, and no measures had been taken to avoid that appearance.

**B**

{34} Based on this construction, we must determine whether a member of the prosecution team may be disqualified based on a determination that an appearance of impropriety precludes that individual from prosecuting. Some commentators have argued, and some jurisdictions have concluded, that an appearance of impropriety may be the basis of disqualifying an individual prosecutor. *See, e.g.*, Roberta K. Flowers, *What You See Is What You Get: Applying the Appearance of Impropriety Standard to Prosecutors*, 63 Mo. L.Rev. 699 (1998); *Palomo*, 31 P.3d at 884. Such a standard has the strength of flexibility but stated generally provides less notice than a busy office might need to make the necessary decisions to keep or transfer a case. A generally stated standard also has a potential for unduly limiting prosecutorial discretion. Avoiding any appearance of impropriety is an important aspiration, but it imposes a heavy burden and one that might, on some facts, produce a result contrary to public policy. *See Armijo*, 118 N.M. at 816, 887 P.2d at 1283. For the following reasons, we construe *Pennington* as requiring a showing of particular circumstances that justifies an inference of a disqualifying interest. In doing so, we address

the two questions the State's arguments have raised: upon what grounds may an entire office be vicariously disqualified and whether Defendants met the showing required under *Pennington*. We begin, however, with the issue of whether Defendants met their initial burden under *Pennington*.

**1**

{35} Defendants argued in support of their motion that prosecutors are quasi-judicial officers. They reasoned that as quasi-judicial officers prosecutors must be seen as impartial. *See State v. Hill*, 88 N.M. 216, 219, 539 P.2d 236, 239 (Ct.App.1975); *Chambers*, 86 N.M. at 386, 524 P.2d at 1002, *overruled on other grounds, Pennington*, 115 N.M. at 378, 851 P.2d at 500. These authorities support the view that in New Mexico prosecutors are viewed as quasi-judicial officers. Our Rules of Professional Conduct recognize prosecutors' special responsibilities. *See* Rule 16–308 NMRA 2005. These rules do not contain a provision comparable to that within the Code of Judicial Conduct specifying grounds for disqualification and recusal. *See generally* Rule 21–400 NMRA 2005 (listing a number of instances in which a judge "is disqualified and shall recuse," but noting the list is "not limited").

{36} *Hill* and *Chambers* describe impartiality in the context of prosecution in a manner specific to the unique functions prosecutors serve. For example, a prosecutor represents the public interest, not the private interests of others or the personal interest of the prosecutor. *See generally Hill*, 88 N.M. at 219, 539 P.2d at 239 (listing two situations in which a prosecutor would have a conflict of interest that would preclude appearance before a grand jury). " '[A prosecutor] should represent public justice and stand indifferent between the accused and any private interest.' " *Chambers*, 86 N.M. at 387, 524 P.2d at 1003 (emphasis omitted) (quoting *People v. Gerold*, 265 Ill. 448, 107 N.E. 165, 177 (1914)). Further, a prosecutor must act impartially in the course of a grand jury hearing. *Hill*, 88 N.M. at 219, 539 P.2d at 239. "[H]is methods in procuring [a] conviction must accord with the fair and impartial administration of

justice, and he should see that the accused receives a fair trial...." *Chambers*, 86 N.M. at 386, 524 P.2d at 1002 (quoting 2 *Thornton on Attorneys at Law*, § 712 (1914)).

{37} At one time, the ethical code for attorneys included an aspirational goal of avoiding an appearance of impropriety. *See* Flowers, *supra*, at 712–716, 766. While that aspirational goal continues to be part of the Canons of Judicial Conduct, it "was excluded from the Model Rules of Professional Conduct because it was considered to be a vague standard that was inapplicable to lawyers." *Id.* at 766; *see also id.* at 717–18. "Nevertheless, ... the concept remained ... part of the conflict-of-interest analysis...." *Romley*, 908 P.2d at 40, and "trial courts will still need to examine closely the facts of each case with an eye to the ultimate goal of maintaining confidence in the integrity of the judicial system." *Id.* at 41.

{38} Under New Mexico law, prosecutors should not be influenced by private interests. *Hill*, 88 N.M. at 219, 539 P.2d at 239; *Chambers*, 86 N.M. at 387, 524 P.2d at 1003. National standards for prosecutors also provide that a prosecutor's professional judgment should not be affected by personal interests. National District Attorneys Association, National Prosecution Standards § 7.3d (2d ed. 1991) (NDAA Standards); American Bar Association, ABA Standards for Criminal Justice: Prosecution Function and Defense Function § 3–1.3(f) (3d ed.1993). More generally, a lawyer may not allow private interests to adversely affect a client. Restatement (Third) of the Law Governing Lawyers § 125 (2000). For a prosecutor, this means at a minimum that private interests may not adversely affect his representation of the public and pursuit of a fair trial.

{39} Bias is a ground upon which a prosecutor may be disqualified. *See Armijo*, 118 N.M. at 816–17, 887 P.2d at 1283–84. We consider bias disqualifying for the same reasons that an interest in the outcome of a case would disqualify a prosecutor. *See generally Young v. United States ex rel. Vuitton*, 481 U.S. 787, 809, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (holding that "counsel for a party that is the beneficiary of a court order may not be appointed a prosecutor in a contempt action alleging a violation of that order") (emphasis and footnote omitted). "[T]he appointment of counsel for an interested party to bring the contempt prosecution in this case at a minimum created opportunities for conflicts to arise, and created at least the appearance of impropriety." *Id.* at 806, 107 S.Ct. 2124 (emphasis and footnote omitted). In sum, the authorities stand for the common sense notion that a prosecutor may not have a personal bias against a defendant. The personal bias that is disqualifying, however, is a bias that creates an opportunity for conflict or other improper influence on professional judgment. There must be a basis in fact for a determination such bias exists.

2

{40} We now review the evidence of bias. It is undisputed that the District Attorney had worked with both Defendants at the Office of the District Attorney for the Third Judicial District. There was evidence from which the district court judge could have found a degree of personal animosity.

{41} Three witnesses testified that Martinez personally disliked Defendants and regularly so stated. The first two witnesses testified regarding comments she made before 1992. She then was a supervisor of one witness, when they were both assistant prosecutors. He testified that she regularly disparaged Defendant Miguel Gonzales' work. The witness had the impression that she disliked Defendant Miguel Gonzales.

{42} The second witness had hired her and oversaw her work. He said "she really did not like [him] and made that apparent and obvious to me...." She also disparaged his work. This witness thought the relationship deteriorated over time, and that she eventually thought he should be fired. Her opinions were unrelated to any "specific act of misconduct."

{43} A third witness testified about comments she made from 1992 to 1994 and in 1996 when she was running initially for the position of District Attorney. This witness worked for her opponent prior to the election, campaigned for her, and worked for her after the election. He stated that during the

period from 1992–94, her dislike of Defendant Michael Gonzales was "very obvious and very open" and that their relationship was adversarial, at least partially because he was a friend of the incumbent District Attorney. He heard her make disparaging comments during the campaign about Defendant Michael Gonzales. This witness said she disparaged his work and his character as well as that of his father. He also recalls her saying that she helped "ge[t] rid" of Defendant Miguel Gonzales. While campaigning, she told this witness and other supporters that Defendant Michael Gonzales would be fired, that he would be "forced out," or that he was "going to go one way or the other." In the opinion of this witness, she made his job impossible, and it was inevitable he would quit or be fired.

{44} Based on the evidence, the district court was entitled to conclude the District Attorney had a significant professional relationship with each Defendant. A prior professional relationship, particularly if antagonistic, creates the real possibility that a prosecutor's motivations might be influenced by more than just prosecutorial judgment. A prior professional relationship also creates the real possibility that the public will perceive that to have happened. The District Attorney had had enough contact with each Defendant, with both as a co-worker and as a supervisor of Defendant Michael Gonzales, to form an opinion of competence and character. Whether that opinion was positive or not, we believe the nature of the professional relationship was the equivalent of a disqualifying interest. *Cf.* Rule 21–400(A)(1) (indicating a judge should recuse when "the judge has a personal bias or prejudice concerning a party"). "The fact that an employee of the court is a party to the proceeding does not of itself disqualify the judge. The judge shall consider the specifics of the case in determining whether the judge's impartiality might reasonably be questioned. . . ." *Id.,* commentary to paragraph A. *Cf. Snyder,* 237 So.2d at 395 (concluding that a district attorney's expressions of animosity justified his disqualification, notwithstanding his statement that he no longer felt animosity).

{45} The district court was entitled to consider the evidence that in other cases the District Attorney had disqualified herself and that it was difficult to distinguish the cases in which she had disqualified herself from this case. An assistant district attorney from another district attorney's office noted that ordinarily charges against a current employee of that office would be transferred to another office and that charges against a prior employee might be investigated and, if a decision was made to prosecute those charges, transfer would be considered. Both Defendants had worked with the District Attorney and one had worked for her, which are relationships that ordinarily would raise a question about whether the case should be transferred. In fact, the record indicates that the District Attorney carefully considered whether or not to transfer the case.

{46} We conclude that the expressions of animosity to which several witnesses testified supported an inference of bias and that the decision to retain prosecution of Defendants while transferring other cases out supported a perception of an interest that had the potential to affect professional judgment. We do not mean to hold that prosecutors are held to the same standard of impartiality as judges. They are advocates on behalf of the public, and under the Rules of Professional Conduct they have special responsibilities that differ from those imposed upon judges by the Code of Judicial Conduct. In the area of disqualification, however, the most specific standard appears within the Code. That standard, indicating a judge should recuse on the basis of personal bias, appears to provide sufficient notice to facilitate compliance by prosecutors.

{47} The focus on applying the standard to prosecutors should be the potential for the bias or interest to affect the proceedings. *Cf. Young,* 481 U.S. at 807–08 n. 18, 107 S.Ct. 2124 (observing that an actual conflict of interest exists where the potential for misconduct is considered intolerable and that a determination of whether misconduct has occurred is not necessary). "We may require a stronger showing for a prosecutor than a judge in order to conclude that a conflict of interest exists." *Id.* at 811, 107 S.Ct. 2124.

In this case, we believe Defendants carried their burden under *Pennington*.

■ {48} What remains is whether disqualification of the District Attorney was imputed to her office. The State had the burden to demonstrate that the District Attorney was screened from the criminal proceeding. She admitted that no screening was attempted and that she personally participated in the proceeding. This gives rise to an appearance of unfairness or impropriety in having anyone in the office prosecute Defendants. A reasonable person might think that the defendant would not receive a fair trial. *See Romley*, 908 P.2d at 42. A reasonable person might think that the continued participation of the office was improper or unjust, diminishing public trust in the integrity of the criminal justice system. *See Palomo*, 31 P.3d at 882; *Romley*, 908 P.2d at 43. The district court did not abuse its discretion by disqualifying the entire office.

### 3

{49} The district court relied in part on the office's discovery violations, including the failure to turn over exculpatory evidence in a timely fashion. Such violations might reinforce a determination to disqualify, but we think the evidence above is sufficient to support affirmance. More importantly, we want to emphasize that disqualification should not substitute for other proceedings tailored to the specific issue, such as motions to compel discovery or order sanctions. We reach a similar conclusion concerning the district court's reliance on the office's civil abatement proceeding. Such conduct might support a determination to disqualify, but there are other avenues of relief.

■ {50} As for the district court's reference to the political nature of the criminal proceeding, we think that the fact that a case is high profile, politically charged, or both, is insufficient for disqualification of a member of the prosecution team. However, after a determination that a member is disqualified, the nature of the case may be relevant in determining that there is an appearance of unfairness or impropriety no curative measure can dissipate. *Romley*, 908 P.2d at 43–

44. Because the District Attorney participated in the prosecution, we need not address the question further.

### III

{51} Reviewing the district court's order for abuse of discretion under the *Pennington* framework, we affirm. The public must have confidence that prosecutorial decisions are made solely on the merits of the case. Prosecutorial recusal or disqualification may be the only answer on particular facts. This result should be unusual. Disqualification of a prosecutor should remain a rare event; disqualification of an entire office even more so.

{52} For these reasons, we affirm the Court of Appeals.

{53} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.