This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:  June 9, 2016**

**STATE OF NEW MEXICO**,

      Plaintiff-Appellee,

v.                         **NO.  S-1-SC-34953**

**RANDALL JONES**,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Stephen K. Quinn, District Judge**

Bennett J. Baur, Acting Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

**DECISION**

**MAES, Justice.**

{1}     In his direct appeal to this Court, Defendant Randall Jones claims that the district court abused its discretion when it refused to disqualify the local district attorney's office and that the district court erred when it admitted the preliminary hearing testimony of Orlando Martinez, a co-defendant.  We affirm Defendant's convictions.

**I.      Facts Relevant to Defendant's Claims**

{2}     Defendant was tried for the murder of Shirley Pacheco. Defendant's friend and former co-defendant, Orlando Martinez, had pleaded guilty to crimes committed during the course of the murder of Shirley Pacheco and testified against Defendant at the preliminary hearing.  On the second day of trial, Kirk Chavez, one of the two trial prosecutors, informed the district court that he had met with Martinez and that Martinez had declared that he would not testify at trial but would instead invoke the Fifth Amendment.  Martinez told the prosecutor to "hit me with a contempt charge, I'll get an attorney, we'll run it concurrent to my current prison sentence."  The prosecutor requested that Martinez be brought to the courtroom, outside the presence

of the jury, and asked by the district court if he truly intended to assert his Fifth Amendment right. The prosecutor explained that he had prepared a use immunity order in the event Martinez agreed to testify. The prosecutor said that he intended to use Martinez's preliminary hearing testimony at trial if Martinez continued to refuse to testify.

{3} Defendant's attorney requested that the court appoint a lawyer to represent Martinez so that he could make an informed decision about whether he would testify. The prosecutor responded that Martinez was not entitled to have an attorney assigned for this proceeding and that Martinez was no different than any other person who declined to testify when ordered to do so.

{4} Martinez was brought into the courtroom and sworn in. He unequivocally told the district court that he would not testify but would instead invoke his Fifth Amendment right. The State provided the district court with a use immunity form and a copy of Martinez's judgment and sentence stemming from his guilty plea in his related case. The district court questioned Martinez about his plea agreement and Martinez made clear his belief that he was not required to testify at Defendant's trial. After an examination of the plea agreement, the prosecutor and the district court agreed that the plea did not require Martinez to testify at any subsequent proceedings

in this case.

{5}     The district court asked Martinez if he would like to meet with an attorney and Martinez stated that he would.  At the court's direction, the parties located Michael Aragon, the attorney who had represented Martinez on charges related to the murder of Shirley Pacheco.  Aragon spoke with the parties, the district court, and Martinez, and confirmed that Martinez would not testify but would instead invoke the Fifth Amendment.  Aragon explained that notwithstanding the prosecutor's offer of a use immunity agreement, Martinez might still face federal charges based on his trial testimony.  The district court instructed Aragon to talk with Martinez the next day.

{6}     Martinez, Aragon, and the parties appeared in district court the next morning.  Martinez still refused to testify at Defendant's trial, even though he knew his refusal could lead to contempt charges.  Martinez explained that, "[W]hen you're in the system, sir, just something you don't do," and also expressed his concern that he might be stabbed in retaliation for testifying.

{7}     Aragon then raised a new problem: he told the district court that Martinez had alleged that while he was incarcerated at Quay County Detention Center (QCDC), he contacted Chavez, who at the time was working in private practice.  Martinez was sworn in and testified about the meeting he claimed to have had with Chavez.

Martinez testified that he had trouble obtaining an attorney he felt could work with him. Martinez recalled Chavez from his first stint in the district attorney's office when Chavez had prosecuted Martinez as a juvenile. Martinez considered Chavez to be a good lawyer.

**{8}** Martinez alleged he met with Chavez in the spring of 2012, with an eye toward retaining him. This meeting lasted about one hour. In addition to Chavez and Martinez, Chavez had with him an assistant or another attorney who took notes during the meeting. During the meeting Martinez revealed many details and confidential information to Chavez. Martinez described both his involvement and Defendant's involvement in Pacheco's murder. Chavez purportedly quoted Martinez a fee of $2,500, but Martinez paid neither that nor any other amount to Chavez. Nor did Martinez sign any agreement with Chavez. When asked, Martinez agreed that he gave a complete statement to the police and that he had already testified at Defendant's preliminary hearing before the alleged meeting with Chavez.

**{9}** The State called Chavez as a witness. He testified that he had returned to the district attorney's office in April 2013, and had no recollection of any meeting with Martinez. Notwithstanding the fact that Chavez had spoken with Martinez several times the day before, this was the first Chavez had heard of any allegation that he had

4

met with Martinez while he worked as a criminal defense attorney in private practice.

{10} Chavez agreed that he knew Martinez and had prosecuted him as a juvenile when Chavez first worked for the district attorney's office. Likewise, Chavez acknowledged that it was possible the two had met at the detention center. Chavez indicated that when he was in private practice he visited clients at the detention center and would frequently speak with other inmates as well. Even if they had met, however, Chavez claimed that he would not have discussed Shirley's murder or the Pacheco family with Martinez because Chavez was close with the Pacheco family and had worked with them in the past. Chavez explained that he could not have shared any private information provided by Martinez with anyone at the district attorney's office because he had no such information.

{11} Defendant made an oral motion for a mistrial and to disqualify the district attorney's office from prosecuting him because of the purported meeting between Chavez and Martinez. The district court found that Defendant's preliminary hearing was held on August 10, 2011, and that any possible meeting between Chavez and Martinez occurred in the Spring of 2012. The district court further found that even if a meeting had occurred, Shirley Pacheco's murder was not the subject of discussion, and Chavez had not returned to the district attorney's office until approximately one

year after the possible meeting took place. In light of the "timing of events," the district court held that Chavez was not acting under a conflict of interest and denied Defendant's request for a mistrial and disqualification.

{12} The following day the State proffered Martinez's preliminary hearing testimony. Defendant objected, claiming that Martinez's unavailability had been caused by the State because Deputy District Attorney Chavez represented the State. Defendant also argued that he had not had an opportunity to conduct a meaningful cross-examination at the preliminary hearing because discovery had not been completed at the time of that hearing.

{13} The district court found that Martinez was unavailable and that the State had not caused that unavailability. Specifically, the court found that any discussion between Martinez and Chavez while Chavez was in private practice had taken place after the preliminary hearing and did not involve Pacheco's murder. The district court observed that "admission of preliminary hearing testimony does not violate the confrontation clause if the witness is unavailable and if the defendant had a prior opportunity to cross-examine the statement that is now being offered into evidence against him."

{14} The district court also reviewed part of the transcript of Martinez's preliminary

hearing testimony. The court observed that Defendant had objected during the preliminary hearing that the cross-examination of Martinez would not be meaningful or effective because Defendant had not yet received "complete discovery." But, the prosecutor argued, the district attorney's office had an open file discovery policy and Defendant had access to all of the discovery available at the time of the preliminary hearing. The district court found that Defendant had made no showing that discovery subsequent to the preliminary hearing disclosed any information that would contradict or otherwise impeach Martinez. The district court again overruled Defendant's objections. The district court ruled that the entirety of Martinez's preliminary hearing testimony would be admitted at Defendant's trial.

{15} Later that day, and notwithstanding the district court's decision to allow use of Martinez's preliminary hearing testimony, District Attorney Rose asked that the court hear testimony from Don Rich Jr., the administrator of the QCDC, and Zac Wachter, Chavez's former legal assistant. Rich had examined the log signed by attorneys visiting inmates and cross-referenced those names and dates with the control tower log, detailing when inmates were taken to legal visits. Rich found that Chavez had visited QCDC on three days that Martinez was incarcerated there. Only on one of those days could any meeting between the two have occurred and even then, the

7

meeting could not have lasted more than five minutes.

{16} Chavez's former assistant, Wachter, recalled that he had accompanied Chavez to visit clients at QCDC, and while he did not specifically remember Martinez, he agreed it was "possible" they had briefly met. Wachter was certain, however, that he had never spoken to any inmate about a murder case. While Chavez would on some occasions quote a price to an inmate during an impromptu meeting, it would be odd for him to have done so after meeting for just five minutes. And to the extent $2,500 might have been a fee amount Chavez would have offered in some circumstances, he never would have suggested that amount to represent an inmate in a case involving a murder.

{17} The district court's ruling remained the same after hearing this additional testimony: the State would be permitted to rely upon Martinez's preliminary hearing testimony at trial. The district court found it highly unlikely that any meeting ever took place between Chavez and Martinez but, even if it had, any such meeting lasted no more than five minutes. The State then presented Martinez's testimony to the jury in lieu of Martinez testifying.

{18} Following the jury trial, Defendant was convicted of the murder in the first degree of Shirley Pacheco (NMSA 1978, § 30-2-1(A)(1) (1994)), aggravated battery

8

with a deadly weapon (NMSA 1978, § 30-16-4(B) (1963)), unlawful taking of an automobile (NMSA 1978, § 30-16D-1A(1) (2009)), tampering with evidence (NMSA 1978, § 30-22-5 (2003)), conspiracy to commit tampering with evidence (NMSA 1978, § 30-28-2 (1963); § 30-22-5), three counts of larceny (NMSA 1978, § 30-16-01 (2006)), and two counts of receiving stolen property (dispose/firearm) (NMSA 1978, § 30-16-11 (2006)).  The district court sentenced Defendant to a term of life plus ten and one-half years imprisonment.  In Defendant's direct appeal to this Court, he claims that the district court abused its discretion when it refused to disqualify the local district attorney's office and that the district court erred when it admitted the preliminary hearing testimony of Martinez. This Court exercises appellate jurisdiction where life imprisonment has been imposed.  *See* N.M. Const. art. VI, § 2; *see also* Rule 12-102(A)(1) NMRA (providing a right to direct appeal when a sentence of life imprisonment has been imposed). "Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently address, we issue this nonprecedential decision pursuant to Rule 12-405(B)(1) NMRA." *See State v. Evans,* No. 33,324, dec. ¶ 2 (N.M. Sup. Ct. June 16, 2014) (nonprecedential).

**II.    Standard of Review**

{19}    "The standard of review for a trial court's decision regarding the

disqualification of a prosecutor or a prosecution office is not easily defined." *State v. Juan*, 2010-NMSC-041, ¶ 31, 148 N.M. 747, 242 P.3d 314 (internal quotation marks and citation omitted). Indeed, the standard under which we review a decision on a motion to disqualify depends upon the nature of the issues. *See id.* "When factual questions are involved, we defer to the sound judgment of the trial court." *Id.* But where the district court "resolves issues involving values that animate legal principles or the consideration of abstract legal doctrines that require the balancing of underlying policies and competing legal interests, our review is de novo." *Id.* (internal quotation marks and citation omitted).

{20}     When evaluating a defendant's claim that the State improperly relied upon the use of preliminary hearing testimony at trial, we "first determine whether the preliminary hearing testimony was properly admitted under the Rules of Evidence." *State v. Lopez*, 2011-NMSC-035, ¶ 4, 150 N.M. 179, 258 P.3d 458 (internal quotation marks and citation omitted). We review the admission of evidence pursuant to an exception to the hearsay rule for an abuse of discretion. *See id.* "Only if the preliminary hearing testimony was properly admitted do we address the Confrontation Clause issue." *Id.* We review claimed violations of the Confrontation Clause de novo. *Id.* ¶ 10.

## III. Discussion

### A. The District Court Did Not Abuse Its Discretion When It Denied Defendant's Motion to Disqualify the District Attorney's Office

{21} Defendant argues that the district court abused its discretion when it failed to disqualify the district attorney's office based on the claim of a past quasi-attorney-client relationship between one of the prosecutors, Kirk Chavez, and a co-defendant, Orlando Martinez. At issue is the nature and content of a meeting between Chavez and Martinez. Defendant argues that Chavez learned confidential information about this case during the meeting. The State argues that any meeting that took place was brief and that Martinez did not disclose any confidential information about Pacheco's murder. Significantly, and as the State observes, motions to disqualify usually arise out of a defendant's belief that a conflict exists between the defendant and the prosecutor.

{22} A court will remove a prosecutor based upon "a conflict of interest where the prosecutor has a prior or current relationship with the defendant that either made the prosecutor privy to relevant, confidential information or where their relationship has created an interfering personal interest or bias." *Juan*, 2010-NMSC-041, ¶ 32 (citation omitted). But in order to require disqualification, the personal interest or bias must be one "that creates an opportunity for conflict or other improper influence on

11

professional judgment." *Id.* (citation omitted). And, of course, there "must be a basis in fact for a determination such bias exists." *Id.* (citing *State v. Gonzales*, 2005-NMSC-025, ¶ 39, 138 N.M. 271, 119 P.3d 151).

{23} We have held that it is the defendant who has "the burden of going forward with evidence and the burden of persuasion." *Id.* When a defendant establishes that one member of the prosecution team should be disqualified, "the burden shifts to the State to prove that the entire office should not be disqualified by imputation." *Id.* (citing *State v. Robinson*, 2008-NMCA-036, ¶ 13, 143 N.M. 646, 179 P.3d 1254). Significantly, given the distinct role as disinterested and impartial public advocates, the "[d]isqualification of a prosecutor should remain a rare event; disqualification of an entire office even more so." *Gonzales*, 2005-NMSC-025, ¶ 51.

{24} Whether the purported meeting between Chavez and Martinez created personal bias or prejudice is a question of fact. *See Juan*, 2010-NMSC-041, ¶ 33. As a result, we review the trial court's decision to deny the motion to disqualify for abuse of discretion. *See id.* "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971

P.2d 829 (filed 1998) (internal quotation marks and citation omitted). When undertaking factual review, "we do not sit as a trier of fact," but instead recognize that "the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (citation omitted). Therefore, "we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 28, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted).

**{25}** Notwithstanding Martinez's testimony that the purported meeting created a conflict between Defendant and Chavez, the record suggests otherwise. While Martinez claims he divulged confidential information that involved not only himself but also Defendant, the district court correctly credited Chavez's testimony that there simply could not have been any discussion about Pacheco or any other member of the Pacheco family. In the absence of evidence that the prosecutor actually received confidential information from or about the accused, we will not require disqualification. *See Robinson*, 2008-NMCA-036, ¶ 22.

**{26}** We defer to the trial court's assessment that it is only a remote possibility that a meeting took place at all. And we further hold that it was rational and consistent

with the logic and effect of the facts and circumstances of the case to find that any meeting that may have occurred resulted in no conflict. Thus, even if Chavez and Martinez met, we affirm the district court's determination to credit Chavez's testimony that the meeting lasted no more than five minutes. Accordingly, the trial court did not abuse its discretion in determining that any meeting that may have taken place between Chavez and Martinez was insufficient to create a bias that warranted disqualification.

**B.      The District Court Did Not Err When It Admitted Martinez's Preliminary Hearing Testimony at Trial**

{27}      Defendant argues that the district court erred when it found that Martinez was unavailable as a witness because he refused to testify and allowed Martinez's preliminary hearing testimony to be admitted at trial. He further argues that this violated his right to confront the witness against him. The State, relying on Rule 11-804(B)(1) NMRA, claims that the preliminary hearing testimony was properly admitted as an exception to the hearsay rule.

{28}      "A hearsay statement consists of an out-of-court statement offered to prove the truth of the matter asserted, and is inadmissible as substantive evidence unless it falls within an exclusion or exception to the hearsay rule." *Lopez*, 2011-NMSC-035, ¶ 5 (internal quotations marks and citation omitted). Pursuant to Rule 11-804(A)(5)

14

NMRA, a witness is unavailable when the witness is "absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance . . . ." A statement of an unavailable witness is admissible if the unavailable witness gave that testimony as a witness at another hearing and if the party against whom the testimony is now offered had "an opportunity and similar motive to develop [the testimony] by direct, cross- or redirect examination." Rule 11-804(B)(1); *see also State v. Gonzales*, 1992-NMSC-003, ¶ 16, 113 N.M. 221, 824 P.2d 1023 (stating that the motives for cross-examination at the preliminary hearing and trial must be similar, but need not be identical), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426.

{29} A district court properly finds a witness unavailable when the witness "refuses to testify about the subject matter despite a court order to do so." Rule 11-804(A)(2). Here, the district court found Martinez in contempt of court for refusing to answer questions. In so finding, the court did not abuse its discretion.

{30} The next step in the analysis, "[w]hether a party had an opportunity and similar motive to develop testimony[,] must be determined on a case-by-case basis." *Lopez*, 2011-NMSC-035, ¶ 6. Here, Martinez testified at Defendant's preliminary hearing.

15

During Defendant's cross-examination of Martinez at the preliminary hearing Defendant exposed inconsistencies between Martinez's testimony at the hearing and Martinez's earlier accounts of his involvement in Pacheco's murder. At both the preliminary hearing and the trial here, "Defendant's motive was to discredit the State's case and to argue that the evidence did not establish his guilt." *See Lopez*, 2011-NMSC-035, ¶ 9. Thus, because Defendant had a comparable opportunity and motive to cross-examine Martinez at the preliminary hearing and at trial, "the district court did not abuse its discretion in admitting [Martinez's] preliminary hearing testimony at trial." *Id.* With no violation of the Rules of Evidence, we turn to the Confrontation Clause.

{31} Like the Sixth Amendment to the United States Constitution, the New Mexico Constitution provides all criminal defendants with the right "to be confronted with the witnesses against him." N.M. Const. art. 11, § 14; *see* U.S. Const. amend. VI. "Testimonial statements satisfying the Rules of Evidence do not necessarily satisfy the requirements of the Confrontation Clause." *Lopez*, 2011-NMSC-035, ¶ 11 (*citing Crawford v. Washington*, 541 U.S. 36, 50-51, 68 (2004)). A testimonial statement is not admissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *See id.* (citation

16

omitted).

{32} Testimony at a preliminary hearing is by definition a testimonial statement. If a preliminary hearing witness does not appear at trial subject to cross-examination, the witness's preliminary hearing testimony cannot be used in place of testimony at trial unless: "(1) the witness is unavailable; and (2) the defendant had a prior opportunity to cross-examine the statement that is now being offered into evidence against him." *Id.* (internal quotation marks and citation omitted).

{33} For Confrontation Clause purposes, Martinez's refusal to testify on Fifth Amendment grounds made him unavailable to testify at trial. *See Gonzales*, 1992-NMSC-003, ¶ 15. Turning to the second requirement, Defendant had an opportunity to cross-examine Martinez on the "statement that is now being offered into evidence against him." *Lopez*, 2011-NMSC-035, ¶ 11 (citation omitted). At both the preliminary hearing and at trial, Defendant faced the same charges, had the representation of the same defense counsel, and possessed the same motive to cross-examine Martinez. *See id.* ¶ 19 (citation omitted). Martinez's unavailability and Defendant's opportunity to cross-examine Martinez at the preliminary hearing satisfied the demands of the Confrontation Clause of the Sixth Amendment. Likewise, the introduction of Martinez's testimony at the preliminary hearing run

17

afoul of neither the Rules of Evidence nor the Sixth Amendment.

**{34}** Our holding is fully supported by *State v. Gonzales*. There, we held that "the testimony was admissible under an accepted hearsay exception and that, because he was given the opportunity to cross-examine the witness at the preliminary hearing, defendant was not denied the right to confront the witness against him." *Gonzales*, 1992-NMSC-003, ¶ 20. We observed that prior testimony should not be admitted if "there was a real difference in motive or other limitation on meaningful cross-examination." *Id.* ¶ 18 (citations omitted). But we held that the defendant was not denied a meaningful opportunity for cross-examination by the defendant's choice not to conduct any cross-examination and to change his theory of defense between the time of the preliminary hearing and the trial. *See id.* ¶ 20. A defendant's strategic decision to limit or forgo cross-examination at the preliminary hearing is different from a limitation on cross-examination imposed by the court. "The extent of cross-examination, whether at a preliminary hearing or at a trial, is a trial tactic. The manner of use of that trial tactic does not create a constitutional right." *Id.* ¶ 19 (quoted authority omitted). New Mexico courts have long held that defendants have similar motivations for cross-examination at preliminary hearings and trials and that this similar motivation provides a sufficient opportunity for confrontation. *See, e.g.*

*State v. Massingill*, 1983-NMCA-001, ¶ 8, 99 N.M. 283, 657 P.2d 139.

**{35}** Defendant also argues that he did not have a meaningful opportunity to cross-examine Martinez because his attorney was unprepared. Defendant's attorney objected on the basis that he could not conduct a meaningful cross-examination at the preliminary hearing without having received all of the discovery material. But this claim is belied by Defendant's cross-examination of Martinez about an inconsistent statement.

**{36}** In any event, the trial judge found that there was not enough information in the record for him to rule on that objection. Specifically, the district court observed that Defendant had made no showing that any later produced discovery would have served to contradict or impeach Martinez. Preliminary hearings, which must be held within sixty days of a defendant's first appearance, usually occur before discovery is complete. *See* Rule 5-302(A) NMRA. The question, however, is not whether all discovery has been exhausted but whether a defendant has had a meaningful opportunity to cross-examine. When a defendant is afforded an opportunity to cross-examine at a preliminary hearing under a motive similar to that at trial, it is a defendant's burden to show that any outstanding discovery substantially and materially impaired the opportunity for cross-examination.

{37} Defendant had a meaningful, substantial, and effective opportunity for cross-examination. Accordingly, there was no error when the district court admitted Martinez's preliminary hearing testimony at trial.

**IV.    Conclusion**

{38} The district court did not err when it denied Defendant's motion to disqualify the district attorney's office and when it admitted at trial Martinez's preliminary hearing testimony. We affirm Defendant's convictions.

{39}    **IT IS SO ORDERED.**


_____
                                        **PETRA JIMENEZ MAES, Senior Justice**

**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**BARBARA J. VIGIL, Justice**

_____

**JUDITH K. NAKAMURA, Justice**

21