2008-NMCA-036

179 P.3d 1254

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Earl Scott ROBINSON, Defendant–Appellee.**

No. 26,594.

Court of Appeals of New Mexico.

Jan. 28, 2008.

Certiorari Denied, No. 30,915,
Feb. 28, 2008.

Gary K. King, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

FRY, Judge.

{1} The State appeals from the district court's order disqualifying the Second Judicial District Attorney's Office from prosecuting this case. The present case stems from charges against Defendant for criminal sexual penetration, criminal sexual contact of a minor, contributing to the delinquency of a minor, and bribery of a witness. Defendant's trial on these charges resulted in a hung jury on several counts. Before the State could retry Defendant, he was indicted for solicitation to commit first degree murder of, among other victims, one of the two attorneys who prosecuted his original trial and initiated his retrial. Upon a motion from Defendant, the district court ruled that Defendant demonstrated an appearance of impropriety in the continued prosecution of the present case by either assistant district attorney (ADA) and disqualified the entire office of the District Attorney for the Second Judicial District (DA's Office) from retrying Defendant. Pursuant to the collateral order doctrine, the State properly appeals from this order of the district court. *See State v. Gonzales*, 2005–NMSC–025, ¶ 19, 138 N.M. 271, 119 P.3d 151 (confirming that the collateral order doctrine justifies immediate review of a trial court order disqualifying the prosecuting attorney).

{2} On appeal, the State argues that Defendant failed to demonstrate that the prosecuting ADAs had a conflict of interest or bias

warranting disqualification and argues that Defendant's post-trial conduct should not form the basis for a finding of prosecutorial conflict or bias. Even assuming that the prosecutors had a disqualifying interest, the State argues that the district court erroneously disqualified the entire Second Judicial DA's Office from prosecuting Defendant. We agree with the State that the prosecuting attorneys did not have a disqualifying interest and, therefore, that there was no impropriety to impute to the remaining attorneys in the DA's Office. Accordingly, we reverse the district court and remand for further proceedings.

## BACKGROUND

{3} In the Second Judicial District, Defendant was tried by the Crimes Against Children (CAC) Division of the DA's Office for three counts of criminal sexual contact of a minor, two counts of contributing to the delinquency of a minor, and one count each of criminal sexual penetration and bribery of a witness. The jury found Defendant not guilty of one count of contributing to the delinquency of a minor and the count of bribery of a witness. The district court directed a verdict on the second count of contributing to the delinquency of a minor, and the jury was unable to reach a verdict on the remaining charges.

{4} ADA Rachel Berenson first entered her appearance in Defendant's trial in August 2001, and, in April and May of 2002, ADA Berenson prosecuted the case along with her supervisor, ADA Lisa Trabaudo, also from the CAC Division of the Second Judicial DA's Office. On May 13, 2002, the district court entered an order declaring a mistrial upon jury disagreement and reflecting the State's reservation of the right to retry Defendant. Due to numerous extensions and this appeal, Defendant has not yet been retried.

{5} On March 29, 2004, the New Mexico Office of the Attorney General (AG's Office) indicted Defendant for solicitation to commit first degree murder and solicitation to commit aggravated battery. ADA Berenson was one of the alleged victims of Defendant's murder threats. Defendant entered into a plea agreement related to these charges, in which he pleaded guilty to two counts of criminal solicitation to commit aggravated battery. The State dropped the charge relating to ADA Berenson, but she nonetheless testified at the hearing on Defendant's sentencing for the charges agreed upon in the plea agreement.

{6} Meanwhile, in November 2004, during pretrial matters in the present case, ADA Berenson transferred out of the CAC Division and ceased all involvement with this underlying case against Defendant. ADA Berenson remained employed with the Second Judicial DA's Office, however, and ADA Trabaudo was assigned to prosecute this case alone, which she has done through the present appeal.

{7} On January 13, 2006, Defendant filed a motion to disqualify all attorneys in the Second Judicial DA's Office due to a purported conflict that was created by the charge against Defendant for allegedly soliciting the murder of ADA Berenson. Following a hearing on the motion, the district court disqualified the entire DA's Office, ruling that Defendant had met his burden of establishing an appearance of impropriety or bias.

{8} The district court agreed with Defendant that ADA Berenson had a disqualifying interest in prosecuting Defendant, which created an appearance of impropriety that was imputed to the entire DA's Office. The district court focused its findings on ADA Trabaudo's involvement with Defendant's current charges and her knowledge of the solicitation charges in the case prosecuted by the AG's Office. The district court found that ADA Trabaudo received the initial call about the solicitation on ADA Berenson's life, reported it to Berenson, and was in contact with the AG's Office about the investigation of the charges and the effect Defendant's plea would have on the current charges for which she was prosecuting Defendant. The district court also found that all of the prosecutors in the Second Judicial DA's Office were aware of the solicitation charges against Defendant, from both word of mouth within the office and from the media, and that they expressed safety concerns about Defendant's possible release from incarceration. With the widespread knowledge and media coverage of the solicitation charges, the district court found that

proper screening mechanisms were not employed, and that, even if they were employed, they may not have been effective to dissipate the appearance of unfairness or impropriety. Based on these findings, the district court granted Defendant's motion and disqualified the entire Second Judicial DA's Office from prosecuting Defendant on the present charges.

{9} Pursuant to the collateral order doctrine and *Gonzales*, 2005–NMSC–025, ¶ 19, 138 N.M. 271, 119 P.3d 151 the State filed this appeal.

## DISCUSSION

### The Standards of Review

■ {10} According to our Supreme Court in *Gonzales*, the standard of review applicable to an order disqualifying a prosecutor or a prosecution office is not easily defined. *Id.* ¶ 20. While this Court concluded that appellate courts review such orders for abuse of discretion in *State v. Pennington*, 115 N.M. 372, 376, 851 P.2d 494, 498 (Ct.App.1993) (stating that "we leave to the sound discretion of the district court whether the circumstances of the specific case require disqualification of the entire [prosecuting] staff"), the Supreme Court stated that the appropriate standard of review "actually is more complex," *Gonzales*, 2005–NMSC–025, ¶ 20, 138 N.M. 271, 119 P.3d 151, and depends upon the "nature of the order and the grounds on which the order is challenged." *Id.* ¶ 25. As always, the trial court resolves the historical facts, which we review under the deferential standard of substantial evidence review. *See id.* ¶ 21. Where the district court resolves issues involving "values that animate legal principles" or the consideration of "abstract legal doctrines" that require the balancing of underlying policies and competing legal interests, our review is de novo. *Id.* (internal quotation marks and citations omitted). To the extent that the dissenting opinion utilizes an abuse of discretion standard contrary to these precepts, we find it unconvincing. Given the mix of standards applicable to disqualification orders, we follow the Supreme Court's example and identify the appropriate standard within our discussion of the issues.

### The Parties' Arguments

{11} In the district court, defense counsel focused on ADA Trabaudo and contended that she should be disqualified from prosecuting Defendant in the present case because it would be impossible for her to avoid developing bias against Defendant, who was accused of soliciting the murder of Trabaudo's trial partner, ADA Berenson. In addition, defense counsel argued, the State failed to take steps to screen prosecutors assigned to the present case from information regarding the solicitation charges against Defendant, which failure translated to inherent bias and taint of the entire office. On appeal, the defense makes similar arguments and contends that both ADA Berenson and ADA Trabaudo had disqualifying interests. Defendant maintains that ADA Berenson had a personal interest—in her continued health and safety—in prosecuting Defendant, which conflicted with her professional obligation to represent public justice. Defendant argues that ADA Trabaudo's extensive involvement with ADA Berenson and the solicitation charge means that Trabaudo also had a disqualifying interest that should prohibit her from prosecuting Defendant. Defendant further argues that the Second Judicial DA's Office did not have adequate screening mechanisms in place to shield the Office from the disqualifying interest to dissipate the appearance of impropriety.

{12} The State argues that neither ADA Berenson nor ADA Trabaudo had a disqualifying conflict of interest or bias, and that, therefore, there was no appearance of impropriety or need to screen the remaining attorneys in the Second Judicial DA's Office. The State argues alternatively that, assuming screening was appropriate in this case, it was achieved to the extent that it was required.

### Analytical Framework

{13} The Supreme Court in *Gonzales* identified the analytical framework that a court must apply to determine whether to disqualify one or more members of a prosecuting staff. *See id.* ¶¶ 28–32. First, the defendant carries the burden of proof to show that "prosecution by a member of the district attorney's office is inconsistent with a partic-

ular standard of professional conduct, justifying disqualification of that person." *Id.* ¶¶ 28, 32. Disqualification may also result, the Court explained, where the prosecutor has a personal bias "that creates an opportunity for conflict or other improper influence on professional judgment." *Id.* ¶ 39. Second, if the defendant establishes that one member of the prosecution team should be disqualified, "an appearance of unfairness or impropriety arises," *id.* ¶ 30, and the burden shifts to the State to prove that the entire office should not be disqualified by imputation. *Id.* The Court explained that the State has an opportunity to screen the remaining attorneys in the office from a disqualified member in a manner that effectively dissipates the appearance of unfairness. *Id.* ¶¶ 30, 32. When applying these principles, the Court warned that, "[d]isqualification of a prosecutor should remain a rare event; disqualification of an entire office even more so." *Id.* ¶ 51.

### Disqualification of the Individual Prosecuting Attorneys

{14} Consistent with the Supreme Court's guidelines, we first consider the propriety of the district court's determination to disqualify the individual prosecutors, ADA Berenson and ADA Trabaudo. At the hearing, counsel for the parties appeared to agree on the basic material facts. When the facts are undisputed, we undertake de novo review. *Paradiso v. Tipps Equip.*, 2004–NMCA–009, ¶ 23, 134 N.M. 814, 82 P.3d 985.

{15} In considering whether the district court properly applied the law to the undisputed facts, we begin by clarifying the standards applicable to an analysis of a prosecutor's conflict of interest or bias. This analysis must be undertaken against the backdrop of the unique role played by prosecutors in our legal system.

### The Prosecutor's Role

{16} "[P]rosecutors are quasi-judicial officers," *Gonzales*, 2005–NMSC–025, ¶ 35, 138 N.M. 271, 119 P.3d 151, who have the distinctive role of disinterested and impartial public advocates. *Id.* ¶ 36. District attorneys are constitutionally mandated, elected state officials, who derive their authority from the people who entrust them with the "very question of what charges to bring and what people to prosecute in the best interest ... of the State of New Mexico." *State v. Brule*, 1999–NMSC–026, ¶ 14, 127 N.M. 368, 981 P.2d 782 (internal quotation marks and citation omitted); *see also* N.M. Const. art. VI, § 24 (mandating the election of a district attorney for each judicial district); NMSA 1978, § 36–1–18(A) (2001) (listing the duties of the district attorneys). As a result, important state and public interests are at stake when a prosecutor is disqualified. Thus, removal of a prosecutor should be unusual. *See Gonzales*, 2005–NMSC–025, ¶ 51, 138 N.M. 271, 119 P.3d 151.

{17} In addition to representing the public interest, a prosecutor must also protect the rights of the accused and maintain both actual and perceived impartiality. *See State v. Hill*, 88 N.M. 216, 219, 539 P.2d 236, 239 (Ct.App.1975). "[A]cting in a quasi[-]judicial capacity, [the prosecutor] and those associated with him [or her] should represent public justice and stand indifferent as between the accused and any private interest." *State v. Chambers*, 86 N.M. 383, 387, 524 P.2d 999, 1003 (Ct.App.1974) (internal quotation marks and citation omitted), *overruled on other grounds by Pennington*, 115 N.M. at 375–78, 851 P.2d at 497–500. Nonetheless, we do not require that prosecutors be held to the same standard of impartiality as judges. *See Gonzales*, 2005–NMSC–025, ¶¶ 35, 46, 138 N.M. 271, 119 P.3d 151 (observing that the provision in the Code of Judicial Conduct for the disqualification of judges has no comparable counterpart in the rule for prosecutors in the Rules of Professional Conduct). In fact, "[w]e may require a stronger showing for a prosecutor than a judge in order to conclude that a conflict of interest exists." *Id.* ¶ 47 (internal quotation marks and citation omitted).

### Disqualifying Conduct or Interest

{18} In this context, as directed by *Gonzales*, we consider whether "prosecution by a member of the district attorney's office is inconsistent with a particular standard of professional conduct." *Id.* ¶ 28. The Code of Professional Conduct recognizes that prosecutors are unique among attorneys in our

adversarial system and contains a provision describing the special responsibilities of a prosecutor. *See* Rule 16–308 NMRA. Neither this rule nor any other rule in the Code of Professional Conduct specifies disqualifying interests of prosecutors, unlike the code of conduct applicable to judges. *See* Rule 21–400 NMRA (listing grounds for disqualification and recusal of judges). This makes sense because, unlike judges, prosecutors are advocates whose potential conflicts of interest are not as clear. *See Gonzales,* 2005–NMSC–025, ¶ 46, 138 N.M. 271, 119 P.3d 151.

{19} We therefore consider whether prosecution by either ADA was inconsistent with other, more general rules of conduct. In his brief, Defendant appears to consider ADA Berenson and ADA Trabaudo to be interchangeable. He argues that the continued prosecution of this case, presumably by either ADA, violated Rule 16–107(B) NMRA, which prohibits a lawyer from representing a client if the lawyer's own interests materially limit that representation. Rule 16–107(B) states the following:

> [A] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's … own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.

Defendant maintains that any attorney, including any prosecutor, has a self-evident "personal interest in [his or] her continuing, pain-free, healthy life," that a prosecutor could not reasonably believe that his or her representation would be unaffected by a threat to that interest, and that the prosecutors in this case did not secure the consent of their client, the public, to continue representation under these circumstances.

{20} We observe that Rule 16–107(B) is not easily applied to a prosecutor. Unlike a non-prosecuting attorney, a prosecutor is not strictly the representative of a "client"; a prosecutor represents the public interest and also protects the rights of the accused. Nonetheless, our Supreme Court explained that "private interests may not adversely affect [a prosecutor's] representation of the public and pursuit of a fair trial." *Gonzales,* 2005–NMSC–025, ¶ 38, 138 N.M. 271, 119 P.3d 151.

{21} It goes without saying that everyone, including each ADA in this case, has a strong private interest in not being killed, but this does not end the inquiry. The threat to the life of ADA Berenson allegedly came from Defendant himself. The *Gonzales* court noted that "a defendant's conduct will almost never be sufficient to disqualify a member of the prosecution team, unless the crime being prosecuted was committed against the prosecuting attorney or someone else involved in the prosecution." *Id.* ¶ 29. Here, the crimes being prosecuted were against a third party minor, not against anyone in the DA's Office. However, we recognize that the statement in *Gonzales* was dictum because it was not necessary to the holding. We therefore look to other case law to inform our analysis of whether the circumstances in this case constitute grounds for disqualification of the individual prosecutors.

{22} A prosecutor may be removed from a case for a conflict of interest where the prosecutor has a prior or current relationship with the defendant that either made the prosecutor privy to relevant, confidential information, *see, e.g., Pennington,* 115 N.M. at 374–75, 851 P.2d at 496–97, or where their relationship has created an interfering personal interest or bias. *See, e.g., Gonzales,* 2005–NMSC–025, ¶¶ 4–9, 40–46, 138 N.M. 271, 119 P.3d 151. Generally, a prosecutor is like other advocates in that, where appropriate, "a prosecutor's personal, business, professional, or prior attorney-client relationship with the accused may constitute grounds for disqualification." Allan L. Schwartz & Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused,* 42 A.L.R.5th 581 (1996); *see also* 5 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 22.5(a)-(c) (2d. ed.1999) (discussing when a prosecutor may be successfully challenged for a conflict of interest, a general due process problem, a disqualifying relationship with the defendant, or when the prosecutor appears as a witness). It is generally recognized that prosecutors should be disqualified "from partici-

pating in state criminal prosecutions [where] they [are] victims of the crime being prosecuted," because they will have improper personal interests in securing a conviction. Schwartz & Veilleux, *supra*, § 14[a].

{23} When a prosecutor is victimized by other actions for which the defendant is separately prosecuted, however, courts have held that the prosecutor does not have a conflict of interest. *See id.* § 14[b]. Many courts have specifically observed that threats on the life of a prosecutor from a criminal defendant will not cause a disqualifying interest in the prosecution of a different offense. *See, e.g., Millsap v.Super. Ct.,* 70 Cal.App.4th 196, 82 Cal.Rptr.2d 733, 738 (Ct.App.1999) (excusing prosecutors from prosecuting solicitation charges of which they were the intended victims and leaving for their discretion whether to sever those charges and continue the prosecution or recuse); *Resnover v. Pearson,* 754 F.Supp. 1374, 1388–89 (N.D.Ind.1991) (rejecting the defendant's assertion that the prosecutor should recuse due to a conflict of interest where the prosecutor believed the defendant had threatened his life), *aff'd,* 965 F.2d 1453 (7th Cir.1992); *State v. Boyce,* 194 Neb. 538, 233 N.W.2d 912, 913–14 (1975) (holding that the county attorney could prosecute a defendant for kidnapping where the defendant kidnapped a police officer with the intention that the officer lead the defendant to the prosecutor so that the defendant could kill him, reasoning that the crime was not complete and the prosecutor was therefore not an "injured party"); *see also* Schwartz & Veilleux, *supra,* § 13. Even where a defendant threatened to bomb the county courthouse, which included the district attorney's office, the court of appeals of Kansas held that the office's victimization was not sufficiently direct to create a personal interest that would impair any of the prosecutors' obligation to act impartially in prosecuting the defendant for the bomb threat. *State v. Cope,* 30 Kan.App.2d 893, 50 P.3d 513, 516 (2002).

{24} The federal district court in *Resnover* observed that, unfortunately, criminal defendants often threaten the lives of judges, prosecutors, and public defenders, stating that

[t]he law is clear that a party, including a defendant in a criminal case, cannot drive a state trial judge off the bench in a case by threatening him or her. It is likewise true that a criminal defendant cannot cause the recusal of his prosecutor by threatening the prosecutor or having him threatened.

754 F.Supp. at 1388–89. Reflecting on the broad acceptance of this reasoning, the *Resnover* court stated that, "[t]here is not a shred of authority from the Supreme Court of the United States, the Supreme Court of Indiana, the United States Court of Appeals in this circuit to support any such constitutional conclusion" that targeting a prosecutor can result in his or her disqualification in the prosecution of the defendant's underlying case. *Id.* at 1388. We agree with these cases that, as matter of policy, a defendant does not create a disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats. *See People v. Hall,* 114 Ill.2d 376, 102 Ill.Dec. 322, 499 N.E.2d 1335, 1347 (1986) ("To hold that the law requires a substitution of judges [where the defendant physically assaults a judge] would invite misconduct toward judges and lawyers, and a practice would develop that the grosser the misconduct the better the chances to avoid trial with an undesired judge or lawyer."), *partially superseded by statute as stated in People v. Mercado,* 244 Ill.App.3d 1040, 185 Ill.Dec. 150, 614 N.E.2d 284, 287–88 (1993).

{25} In the present case, neither ADA Berenson nor ADA Trabaudo had a disqualifying interest in the prosecution by virtue of Defendant's alleged solicitation of Berenson's murder. There is insufficient evidence that would justify an inference of either an improper interest or personal bias that interfered with their professional judgment that would not likely be shared by every prosecutor in the State. Neither ADA prosecuted Defendant for the alleged solicitation he made on ADA Berenson's life. The AG's Office brought the charges and investigated the offense. Moreover, ADA Berenson transferred out of the CAC Division shortly after Defendant allegedly threatened her, and she had nothing further to do with the prosecution of the present case.

{26} As for ADA Trabaudo, we are not convinced that her close work with ADA Berenson or the assistance she gave to the AG in its prosecution for the solicitation charge requires her disqualification. Contrary to the reasoning of the district court, mere knowledge of Defendant's threats against ADA Berenson and of the investigation into the threats does not constitute disqualifying information or create a presumption of unfairness. We agree with the State that mere knowledge of the alleged solicitation is both insufficient and discoverable by any prosecution team in this state. We see no support in the law or the record for determining that ADA Trabaudo had either a conflict or improper bias.

{27} We recognize that the district court supported its ruling to disqualify ADA Trabaudo and the entire Second Judicial DA's Office by reference to the concern of all those in the DA's Office about keeping Defendant in custody while he was awaiting retrial, due to his solicitation charge against one of their prosecutors. However, Defendant's alleged solicitation and his conviction for two counts of criminal solicitation to commit aggravated battery indicate that he poses a danger to the public, to any substituting prosecutor from any district, and to the witnesses in this case, whom he had also threatened. Furthermore, neither Defendant nor the district court describe how the DA's Office attempted to keep Defendant incarcerated and why it was improper. For these reasons, we are not persuaded that ADA Trabaudo's or the other ADAs' desires for Defendant to remain in custody is evidence of improper interest or bias.

## Disqualification of Entire DA's Office

 {28} Because Defendant has not established that the disqualification of either ADA was justified, the Second Judicial DA's Office cannot be disqualified by imputation. An entire office is not subject to disqualification unless an individual prosecutor is disqualified and there is a danger that the prosecutor's bias or disqualifying interest will taint the remaining attorneys in the office or will give the appearance of impropriety to continued prosecution by other attorneys. *See Gonzales*, 2005–NMSC–025, ¶¶ 30–32, 48, 138 N.M. 271, 119 P.3d 151. Consequently, there was no reason for the district court to require the State to demonstrate that proper screening was in place. *See id.* Accordingly, we hold that the district court erroneously disqualified ADAs Berenson and Trabaudo and the entire Second Judicial DA's Office.

## CONCLUSION

{29} For the reasons stated above, we reverse the district court's order of disqualification and remand for further proceedings.

{30} **IT IS SO ORDERED.**

I CONCUR: LYNN PICKARD, Judge,
RODERICK T. KENNEDY, Judge
(dissenting).

KENNEDY, Judge (dissenting).

{31} I respectfully dissent from the majority's opinion. I would affirm the district court's ruling as a proper exercise of its discretion based on the evidence before it. DAs Berenson and Trabaudo were properly disqualified from this case, as was their office.

{32} I believe that by using the amorphous standards of review given us by *Gonzales*, the majority have given insufficient deference to the findings of the district court. 2005–NMSC–025, ¶¶ 22–25, 138 N.M. 271, 119 P.3d 151. The opinion sets the bar so high as to disregard the DAs' personal involvement with Defendant. This gives rise to real concern as to whether their involvement with his case could appear to be above reproach. I believe ADA Berenson, had she not left the case, would have been properly disqualified. Furthermore, the district court's findings regarding ADA Trabaudo's direct involvement with both ADA Berenson and the timbre of the DA's office's feelings about Defendant are similarly entitled to our deference. Based mostly on speculation that with the passage of time, there are now prosecutors in the DA's office whose connection to this case would be minimal, I might concede that the taint could dissipate and be isolated today; however, I find myself satisfied with the district court's decision in 2006.

{33} We are required to "give great deference to a trial court's factual determinations." *Gonzales*, 2005–NMSC–025, ¶ 21, 138

N.M. 271, 119 P.3d 151; *see Pennington*, 115 N.M. at 379, 851 P.2d at 501 ("The local district court is in a far better position than an appellate court to evaluate and weigh the evidence on the matter."). Out of seventeen findings of fact, twelve deal with ADA Berenson, ADA Trabaudo and both their personal involvement with Defendant's solicitation case and with each other. The facts as determined by the district court are sufficient to support its legal conclusions.

{34} There is enough evidence in this case to establish an interest sufficient to disqualify ADA Berenson, which would then require the State to prove that the entire office should not be disqualified. The majority cites to *Cope*, a Kansas case that is distinguishable from the case here by the total lack of personal contact between the threatening defendant and the prosecutor's office in question. 30 Kan.App.2d 893, 50 P.3d 513. *Cope* is valuable, however, when it reminds us that with respect to an individualized threat,

> [i]t is true that a targeted victim of a crime would be personally and emotionally vested in the outcome of the crime charged. The key in deciding whether a prosecutor should be disqualified is whether the prosecutor has a significant personal interest in the litigation which would impair the prosecutor's obligation to act impartially toward both the State and the accused.

*Id.* at 516. The court in *Cope* also noted that a conflict of interest was not created between the defendant and the district attorney's office because he "never directly threatened the district attorney's office." *Id.*

{35} I find this case to be distinguishable from the cases that the majority relies on. For instance, the majority relies on *Resnover* for the proposition that the prosecutor does not have to recuse himself when the prosecutor believes that the defendant has threatened his life. This case involves more than just a perceived threat to the prosecutor: there was an actual threat. The prosecutor in this case acted on the threat by reporting it, resulting in subsequent prosecution against Defendant. Although the charge relating to the threat against ADA Berenson was later dropped, ADA Berenson testified at Defendant's sentencing for the conspiracy. Furthermore, the court in *Resnover* held that

the prosecutor did not have a conflict of interest based on a lack of constitutional law to support the defendant's assertions. 754 F.Supp. at 1388–89. Defendant, in this case, does not rely on any constitution for his arguments.

{36} My focus in this case is on the actions of the DAs following the threat. What troubles me is that even though ADA Berenson was not a named victim in the conspiracy for which the district court was sentencing Defendant, she testified at his sentencing. On a motion to review conditions of release that was later withdrawn, ADA Trabaudo felt it necessary to bring another possible, yet separate threat against herself to the district court's attention in an effort to keep Defendant from posting bond. The district court found that the DA's office had not been properly screened, and even if it had, screening measures would have been inadequate. I feel compelled to consider all of the circumstances of the case—including what occurred after the threat was communicated and what the district court considered to be an "egregious" threat that generated much publicity. *See People v. Conner*, 34 Cal.3d 141, 193 Cal.Rptr. 148, 666 P.2d 5 (1983) (in bank) (affirming the district court's decision to disqualify the entire district attorneys office from prosecuting charges against the defendant, when the defendant had made a threat against a district attorney and the district attorney had witnessed a shooting of a deputy sheriff by the defendant).

{37} The district court's findings further note that ADA Trabaudo took the call regarding Defendant's solicitation of harm to ADA Berenson and was the one who informed her trial partner of the threat. When ADA Berenson was prepared to testify and be interviewed by the public defender, ADA Trabaudo helped her prepare for the interview. ADA Trabaudo was involved in conversations with the AG's Office prosecuting the solicitation case in which she opposed consolidating this case for a plea with the solicitation case. She told ADA Berenson when Defendant was released on parole as her prosecutorial duty to a victim. When Defendant had a review of his bond, she participated in opposing his release with an

office that was "frantic" to keep Defendant in jail to make sure he was not released on bond. At another bond hearing, ADA Trabaudo argued against bond even after Defendant withdrew his motion, indicating that she, too, had been the object of another conspiracy by Defendant to kill her because of her prosecution of Defendant. This is enough evidence to support the district court's conclusion that ADA Trabaudo should be disqualified as well. In that communication to the court she indicated that the DA office investigators were working with police to investigate the threat against her. Despite this involvement in both the present case and the solicitation case, no effort was made to screen the remainder of the DA's office from the controversies—in fact, we know that when Defendant came up for bond, the remainder of the DA's officer was "frantic" that he not be released. This is not the separation between those involved and the office that *Pennington* talked about. 115 N.M. at 376, 851 P.2d at 498 ("There may well be circumstances in which concern about the appearance of impropriety would justify disqualification of the entire district attorney's staff.").

{38} The majority speaks of the "particular standard of professional conduct" for prosecutors in situations like this. I believe that more well articulated standards exist than those general standards such as are mentioned in paragraph 20 of the majority opinion:

> In conducting a criminal case the prosecuting attorney must be fair and impartial, and see that [the] defendant is not deprived of any constitutional or statutory right, because he is a quasi judicial officer.

> This rule, founded on justice and fair dealing, we think is intended not only to restrain the offer of illegal evidence or the violation of the orderly rules of procedure by prosecuting officers, but also to require their recusation in those cases in which their interest, directly or indirectly, may be such as to cause them to sacrifice impartial justice to personal advantage.

> The district attorney is a quasi judicial officer. He represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice, and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes. Therefore he should not be involved or interested in any extrinsic matters which might, consciously or unconsciously, impair or destroy his power to conduct the accused's trial fairly and impartially.

*Sinclair v. State,* 278 Md. 243, 363 A.2d 468, 476 (1976) (internal quotation marks and citation omitted) (requiring an evidentiary hearing when a defendant has presented a case for conflict of interest and seeks disqualification of the prosecuting attorney).

{39} Hence, I see the district court's conclusions of law (which were more directed at the office as a whole) as springing from the findings that both prosecutors individually had enough personal stake to be disqualified, and that the State did not carry its burden to show otherwise once ADA Berenson was disqualified. With such a personal interest, a reasonable appearance of impropriety would exist that their involvement with this case and the solicitation to murder would make them act in ways reflecting their personal and not professional duties. This is a reasonable conclusion from the evidence.

> A conflict of interest exists in the prosecution of a criminal case whenever the circumstances of the case evidence a reasonable possibility that the prosecutor's office may not exercise its discretionary function in an evenhanded manner. However, a conflict of interest warrants recusal only if the conflict is so grave as to render it unlikely that the defendant will receive fair treatment during all portions of the criminal proceedings.

*Cope,* 50 P.3d at 515–16.

{40} "[A]ll portions of the criminal proceedings" are not going to be impacted. *Id.* at 516. Charging decisions, discovery, bond arguments are all by the boards. This appeal concerns the embroilment of two prosecutors and their office in extra-curial situations. It involved Defendant to a point where their further participation in the case, and that of their office, could reasonably be questioned. It was questioned, and resulted in the proper exercise of judicial discretion

disqualifying them and their office. I therefore dissent from the majority opinion.