This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 29,235**

**BARRY CHOYCE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Law Office of Craig C. Kling
Craig C. Kling
San Diego, CA

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Defendant appeals from his conviction for trafficking a controlled substance, contrary to NMSA 1978, § 30-31-20 (2006). On appeal, Defendant contends (1)

the district court erred in allowing Assistant District Attorney Chris Mills (ADA Mills) to participate in jury selection because ADA Mills knew Defendant in grade school and high school, (2) the district court erred by allowing the dismissal of an African-American juror because Defendant is also African-American, and (3) the district court improperly denied a directed verdict based on a highly suggestive identification. This Court issued a calendar notice proposing to affirm. Defendant has filed a memorandum in opposition, which we have duly considered. Because we are unpersuaded by Defendant's arguments in opposition to our proposed disposition, we affirm.

**The District Court Did Not Err in Refusing to Disqualify ADA Mills**

Defendant contends that the district court erred when it allowed ADA Mills to assist in selecting a jury. In his docketing statement, Defendant asserted that he and ADA Mills knew each other in high school and that it was "highly likely that [ADA] Mills had some insight into [Defendant's] background and that the insight that he possessed unfairly influenced the prosecutor during the voir dire and jury selection stage of the trial, resulting in an [sic] jury selection that was not fair and impartial." [DS 7] In support of this argument, Defendant cited *State v. Robinson,* 2008-NMCA-036, 143 N.M. 646, 179 P.3d 1254. [DS 2, 8] In this Court's calendar notice, we noted that to the extent Defendant was relying on a fight

Defendant may have been in with ADA Mills in high school to argue that *Robinson* required ADA Mills' removal from the case, *Robinson* provided that a prosecutor could not prosecute a defendant for a crime if the prosecutor was a victim of that crime. *Id.* ¶¶ 23-24. We further noted that *Robinson* did allow a prosecutor to separately prosecute a defendant for another crime, despite the fact the prosecutor had been victimized by the defendant in a manner other than that charged. *Id.* Thus, we proposed to conclude that, to the extent Defendant was relying on a prior victimization of ADA Mills to argue that ADA Mills should be disqualified, *Robinson* did not require the district court to do so.

To the extent Defendant now argues that ADA Mills should have been disqualified because he and Defendant were friends in grade school or high school, and ADA Mills was privy to relevant, confidential information, we remain unpersuaded. In his memorandum in opposition, Defendant contends that ADA Mills was aware that Freddie Heckard, the prospective African-American juror the prosecutor challenged, knew Defendant even though Mr. Heckard did not respond affirmatively during voir dire when the venire was asked if anyone knew Defendant. [MIO 2] Defendant contends that ADA Mills alerted the trial court that he did not believe Mr. Heckard was being completely truthful during voir dire. [MIO 2-3] When Mr. Heckard informed the Court he knew Defendant as a friend

of his son's, the State moved to strike Mr. Heckard for cause. The district court denied the State's request, and the State used a peremptory challenge to strike Mr. Heckard.

In support of his argument, Defendant again relies on *Robinson* for the proposition that "[a] prosecutor may be removed from a case for a conflict of interest where the prosecutor has a prior or current relationship with the defendant that either made the prosecutor privy to relevant, confidential information, or where their relationship has created an interfering personal interest or bias." *Id.* ¶ 22 (citing *State v. Pennington*, 115 N.M. 372, 374-75, 851 P.2d 494, 496-97 (Ct. App. 1993), and *State v. Gonzales*, 2005-NMSC-025, ¶¶ 4-9, 40-46, 138 N.M. 271, 119 P.3d 151). Defendant has not demonstrated, however, how the information possessed by ADA Mills was "relevant, confidential information"; how ADA Mills' continued prosecution of Defendant ran afoul of a particular standard of professional conduct; or whether ADA Mills had a significant personal bias against Defendant. Nor do the cases cited by this Court in *Robinson* for the proposition Defendant relies on assist in Defendant's argument. *See Pennington*, 115 N.M. at 374, 851 P.2d at 496 (acknowledging that there was no dispute that an investigator who had previously worked for the defendant but then moved to the prosecutor's office had confidential information, but concluding that the screening

4

process afforded sufficient protection so the entire district attorney's office did not have to be disqualified); *see also Gonzales*, 2005-NMSC-025, ¶¶ 40-48 (upholding the disqualification of an entire district attorney's office where one of the attorneys had a significant professional and antagonistic relationship with the defendant and a strong personal bias against the defendant, where no attempt to screen the attorney had been made).

It is Defendant's burden of proof to show that a particular standard of professional conduct or a personal bias disqualifies the prosecutor. *See Robinson*, 2008-NMCA-036, ¶ 13. Defendant has not demonstrated how information that a juror knew Defendant was confidential information that disqualified ADA Mills from participating in Defendant's prosecution. Nor has Defendant demonstrated a personal bias or that a particular standard of professional conduct was violated by ADA Mills' participation. As a result, we conclude that Defendant has not demonstrated how the information he claims ADA Mills possessed and utilized required ADA Mills' disqualification. Accordingly, we affirm on this issue.

**The District Court Did Not Err by Permitting the State to Exercise a Peremptory Challenge Against an African-American Juror**

In his docketing statement, Defendant asserted that the district court erred by permitting the State to exercise a peremptory challenge against Mr. Heckard, a

prospective African-American juror. In this Court's calendar notice, we proposed to affirm the district court's decision, because it appeared the State had offered a race-neutral reason, and Defendant had not demonstrated how he rebutted the State's explanation. In his memorandum in opposition, Defendant points out that it became known during the course of voir dire that Mr. Heckard knew Defendant—Defendant was a friend of Mr. Heckard's son—and that Mr. Heckard had not volunteered this information when the venire was asked if anyone knew Defendant. Mr. Heckard informed the district court that, while it could be more difficult, he would not be unduly influenced by his son's relationship with Defendant. [MIO 3] Mr. Heckard also stated that he had been feeling ill and that he was confused during voir dire. [Id.] Defendant contends that, despite this information, the State did not provide a race-neutral reason for use of its peremptory challenge. Defendant further argues that the fact Mr. Heckard and Defendant knew each other is not a race-neutral reason since the reason they knew each other was because they are both part of the African-American community in Hobbs. [MIO 4]

"A trial court's determination of whether the state has properly provided racially neutral reasons will be upheld on appeal if the determination is supported by substantial evidence." *State v. Moore*, 111 N.M. 619, 620, 808 P.2d 69, 70 (Ct.

6

App. 1991). "The state's explanations need not rise to the level justifying removal of a juror for cause; however, the reasons must be clear, reasonably specific, and related to the issues to be tried." *Id.* It is sufficient if the state provides an explanation "that the trial court can determine is a bona fide reason relating to legitimate criteria in selecting a jury on behalf of the state." *Id.*

Here, Mr. Heckard knew Defendant and failed to volunteer this information when the venire was asked if anyone knew Defendant. Mr. Heckard, although stating that he could be neutral, admitted that it might prove more difficult for him since he knew Defendant. We have previously held that similar circumstances constituted a race-neutral justification for removing a venire member. *See id*. at 620-621, 808 P.2d at 70-71 (determining that the State's use of a peremptory challenge against the only African-American member of a jury venire was racially-neutral where the prosecutor was aware that the juror knew one of the witnesses and the juror did not volunteer this information during voir dire when the venire was asked). In *Moore*, we stated that the prosecutor was entitled to be concerned with a venire member's lack of candor based on her failure to answer the prosecutor's questions and inform the court that she knew one of the witnesses. *Id.* We therefore conclude that here "[t]he district court was entitled to find that the

prosecutor's explanation related to a legitimate criteria in selecting jurors acceptable to the state." *Id.*

To the extent Defendant attempts to argue that the State did not provide a racially-neutral reason because Mr. Heckard and Defendant only knew each other because they were part of the African-American community in Hobbs and, thus, the challenge was still based on race, Defendant has not provided any authority in support of his argument. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (providing that an appellate court will not consider an issue if no authority is cited in support of the issue). Accordingly, we affirm on this issue.

**The District Court Did Not Err by Refusing to Grant a Directed Verdict**

Defendant contends, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that the officer that identified Defendant, Agent Fedric, did so under highly influential circumstances and that the district court should have granted a directed verdict. In this Court's calendar notice, we stated that we understood Defendant to argue that the officer's identification should have been suppressed, and without the identification, a directed verdict was appropriate. We proposed to conclude that, although the method of identification was highly suggestive, the identification was nonetheless reliable based on the totality of the circumstances. [CN 7]

Specifically, we noted that the identifying officer had plenty of time to observe Defendant while he was engaged in face-to-face negotiations over the purchase of crack cocaine; that the officer would have been especially attentive at the time of the crime, given that he knew he would have to identify the perpetrator later; that there was no indication that the officer expressed any uncertainty regarding his identification; and that it did not appear there was any significant period of time between the crime and the identification.  [CN 7-8]

In his memorandum in opposition, Defendant contends that this Court's reliance on *State v. Stampley*, 1999-NMSC-027, ¶ 14, 127 N.M. 426, 982 P.2d 477, is misplaced since the officer's identification was not based on a photo array, but on an individual photograph, thus, making it more akin to a show-up identification. [MIO 5]  Defendant's argument is unpersuasive, as the analysis for a photo array and a show-up identification are the same.  According to *State v. Johnson*, 2004-NMCA-058, ¶ 13, 135 N.M. 567, 92 P.3d 13, "[i]n reviewing the admissibility of showup identification, we analyze whether the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and, if so, whether the identification is nonetheless reliable under the totality of the circumstances."  *Johnson* further provides that "[t]o assess reliability, 'courts weigh the corrupting effect of the suggestive identification'

against five factors[:] . . . (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's pre-identification description, (4) the certainty of the witness, and (5) the time elapsed between the crime and the identification." *Id.* These are the factors this Court relied on in proposing to conclude that the suggestiveness of the identification was outweighed by its reliability. Defendant does not address these factors with respect to Agent Fedric's identification of Defendant. [MIO 5] *See State v. Sisneros*, 98 N.M. 201, 202-03, 647 P.2d 403, 404-05 (1982) ("The opposing party to summary disposition must come forward and specifically point out errors in fact and in law."). Accordingly, we affirm on this issue.

For the reasons stated above and in this Court's notice of proposed disposition, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

10

_____

**JONATHAN B. SUTIN, Judge**