NOT DESIGNATED FOR PUBLICATION

No. 115,394

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER M. MCGUIRE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed June 2, 2017. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.


*Per Curiam:* This appeal asks whether all attorneys in a district attorney's office are disqualified from prosecuting a case in which one assistant district attorney in that office is the victim of the crime being prosecuted. The district court answered that question negatively, and given the facts of this case, we find no abuse of discretion in that decision. Accordingly, we affirm.

1

*Factual and procedural background*

In 2009, Christopher M. McGuire pleaded guilty to two counts of felony aggravated battery in case 09 CR 1935. The assistant district attorney who prosecuted him was S.W., who is also the victim in this case. The district court granted a defense motion for dispositional departure and sentenced McGuire to probation. In 2010, McGuire admitted to having violated his probation and was sent to Larned State Hospital due to mental health concerns.

While in Larned, McGuire threatened S.W. and another assistant district attorney in a letter he mailed to them. As a result, McGuire was charged with two counts of criminal threat in case 10 CR 3086. McGuire pleaded guilty as charged and agreed that the threats were sexually motivated. His criminal history score at that time was A. He has not challenged that guilty plea.

In 2014, S.W. received another threatening letter from McGuire. It stated, among other things, "I want to feel the sexual ecstasy while I watch you die in such a hopeless situation." The return address stated that the letter was from "CHRISTOPHER MCGUIRE at the El Dorado Correctional Facility in El Dorado Kansas." Four latent fingerprints on the letter matched McGuire's left thumb.

The district court issued a warrant for McGuire's arrest for the crime of criminal threat. The State filed a notice that it was prosecuting McGuire's criminal threat as sexually motivated. McGuire then moved to disqualify the Sedgwick County District Attorney's office (SCDA) and to appoint a disinterested prosecutor. McGuire asserted that SCDA had a conflict of interest because S.W., the alleged victim of the criminal threat, was an assistant district attorney in that office. At the disqualification hearing,

2

McGuire's counsel claimed that McGuire would accept a plea if the State dropped the sexual motivation charge.

After the disqualification hearing, the district court determined that SCDA could prosecute McGuire evenhandedly, so it denied McGuire's motion. McGuire then voluntarily waived his right to a jury trial. Before the bench trial, the parties stipulated to the following: S.W. was an assistant district attorney employed at SCDA; McGuire wrote the letter to S.W. out of sexual motivation and with the intent to place S.W. in fear; and McGuire's fingerprints were on the letter. The district court found McGuire guilty beyond a reasonable doubt, convicted McGuire of criminal threat, and determined that McGuire had made the criminal threat out of sexual motivation.

McGuire has timely appealed. McGuire's sole argument on appeal is that SCDA had a disqualifying conflict of interest because the victim of his criminal threat was an assistant district attorney in that office. McGuire contends that the conflict of interest created a "substantial possibility" that the prosecutor from SCDA would not handle the case in an evenhanded manner, so that appointment of a special prosecutor was warranted.

*Disqualifying a prosecutor's office is unlike disqualifying a private firm*

We begin by recognizing that an impartial prosecutor is of fundamental importance to the administration of justice:

> "The prosecution of criminal offenses is the responsibility of the public prosecutor who ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. It is important to the public, as well as to individuals suspected or accused of crimes, that these discretionary functions of the

prosecutor be exercised with the highest degree of integrity and impartiality, and with the appearance of the same. [Citation omitted.]

"The prosecutor speaks not only for the victim, or the police, or those who support them, but for all citizens. [Citation omitted.] Both the accused and the public have a legitimate expectation that the prosecutor's zeal will be objective and impartial in each individual case. [Citation omitted.]" *State v. Cope*, 30 Kan. App. 2d 893, 895, 50 P.3d 513 (2002).

The United States Supreme Court has recognized "[t]he requirement of a disinterested prosecutor," because "[a] prosecutor exercises considerable discretion" in a criminal proceeding, and these decisions "are all made outside the supervision of the court." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987).

We note that disqualifying an entire government office has different implications than disqualifying a private law firm. "'The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary.'" *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (quoting *Bullock v. Carver*, 910 F. Supp. 551, 559 [D. Utah 1995]). We mention two underlying concerns:  the separation of powers issues and the incentive to remove certain prosecutors from a case.

Recognizing the significant separation of powers issues implicated by such judicial action, the federal appeals courts have uniformly reversed the disqualification of an entire United States Attorney's Office. See *Bolden*, 353 F.3d at 879. "[E]very circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification." 353 F.3d at 879. Disqualification of an entire office is unprecedented. *United States v. Rodella*, 59 F. Supp. 3d 1331, 1364 and n.3 (D.N.M. 2014).

4

"[B]ecause disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify 'a specific Assistant United States Attorney . . . , not all the attorneys in' the office." *Bolden*, 353 F.3d at 879. See, *e.g.*, *United States v. Marquez*, 603 Fed. Appx. 685, 689-90 (10th Cir. 2015) (unpublished opinion) (finding the district court correctly denied Marquez' motion to disqualify the entire United States Attorney's Office in part because Assistant U.S. Attorney whose house Marquez burglarized was not involved in Marquez' prosecution); *Rodella*, 59 F. Supp. 3d at 1348-49 (stating even if the court disqualified a particular prosecutor, the court would not disqualify the entire United States Attorney's Office but would instead order that different attorneys from the office, who are not disqualified, prosecute the case). The same rationale holds true for state attorney offices. See, *e.g.*, *Millsap v. Superior Court*, 70 Cal. App. 4th 196, 199, 203-05, 82 Cal. Rptr. 2d 733 (1999) (finding the two prosecutors who were targets of the defendant's alleged murder solicitation were not allowed to prosecute the solicitation case, but no conflict of interest justified recusal of the entire prosecutorial office); *Brown v. State*, 455 So. 2d 583, 583-84 (Fla. Dist. App. 1984) (other members of a state attorney's office are not disqualified from prosecuting a criminal case merely because one prosecuting attorney in the office is the alleged victim and a State's witness in the case).

A second concern is that disqualifying an entire prosecutor's office could incentivize defendants to remove a prosecutor by the use of threats, jeopardizing the administration of justice. "[I]f the disqualification of one government attorney could serve as the predicate for the disqualification of the entire United States Attorney's Office, the administration of justice would be irreparably damaged." *Grand Jury Subpoena of Ford v. United States*, 756 F.2d 249, 254 (2d Cir. 1985). Thus courts have specifically observed that threatening a prosecutor will not necessarily create a disqualifying interest in the prosecution of a different offense against the same defendant. See, *e.g.*, *State v. Robinson*, 143 N.M. 646, 652, 179 P.3d 1254 (Ct. App. 2008) ("We

5

agree with these cases that, as a matter of policy, a defendant does not create a disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats."); *State v. McManus*, 941 A.2d 222, 232 (R.I. 2008) (holding that when a defendant allegedly threatens the life of a prosecutor, requiring that prosecutor's disqualification would "provide an incentive for defendants to engage in such unlawful conduct."); *Kindred v. State*, 521 N.E.2d 320, 327 (Ind. 1988) (finding the alleged threat to the prosecutor's life was not a sufficient conflict of interest to justify disqualifying the prosecutor and appointing a special prosecutor, in part because allowing prosecutors "to be disqualified merely upon the unilateral action of defendants . . . would lead to absurd consequences."); *Resnover v. Pearson*, 754 F. Supp. 1374, 1388-89 (N.D. Ind. 1991) (rejecting defendant's argument that alleged threats made to the prosecutor required recusal, and finding a criminal defendant cannot cause the recusal of his or her prosecutor by threatening the prosecutor); *Millsap v. Superior Court*, 70 Cal. App. 4th at 203 (concluding, "If it were possible to recuse the entire office by fomenting some kind of a threat against the trial deputy, defendants bent upon delay or other obstruction, or just wanting to be rid of an effective prosecutor, would have the means to accomplish that objective."). With those underlying principles in mind, we address the specific question raised in this appeal.

*Our standard of review is abuse of discretion*

We review the trial court's decision on a motion to disqualify an attorney from handling a legal matter for an abuse of discretion. See *State v. McKibben*, 239 Kan. 574, 581-82, 722 P.2d 518 (1986) (finding no abuse of discretion in district court's ruling that the entire three-person staff of the county attorney's office need not be disqualified even though one of them formerly represented the defendant in the very matter for which he was being prosecuted); *Cope*, 30 Kan. App. 2d at 897 (finding trial court did not abuse its discretion in refusing to disqualify district attorney's office from prosecuting defendant

6

who had threatened to blow up the courthouse in which prosecutor's office was located). "Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact." *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The party claiming that the trial court abused its discretion has the burden to show such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015). Here, that party is McGuire.

*No violation of the Model Rules of Professional Conduct is alleged*

We note that the parties do not allege any violation of the Model Rules of Professional Conduct; thus, we make no determination regarding them. See *State v. Dimaplas*, 267 Kan. 65, 67-68, 70, 978 P.2d 891 (1999) (applying de novo review and finding Kansas Rules of Professional Conduct did not preclude one attorney in the Saline County Attorney's Office from prosecuting a case in which another attorney from that same office was a material witness). *Dimaplas* held that in determining attorney disqualification issues, the rules of professional conduct specifically reject the appearance of impropriety standard in favor of a "function approach," concentrating on preserving confidentiality and avoiding positions actually adverse to the client. 267 Kan. at 68. That same approach, however, is reflected in the caselaw governing our resolution of this case, as we discuss below.

*Did the district court err in denying McGuire's motion to disqualify SCDA?*

Under Kansas law, a conflict of interest exists when the circumstances of the case evidence "a reasonable possibility that the prosecutor's office may not exercise its discretionary function in an evenhanded manner." *Cope*, 30 Kan. App. 2d at 895-96. But not every conflict in the prosecution warrants recusal. Recusal is warranted only when the

7

conflict of interest "is so grave as to render it unlikely that the defendant will receive fair treatment during all portions of the criminal proceedings." 30 Kan. App. 2d at 896. More relevant to this case, in which we have a targeted victim, this court stated:

"It is true that a targeted victim of a crime would be personally and emotionally vested in the outcome of the crime charged. The key in deciding whether a prosecutor should be disqualified is whether the prosecutor has a significant personal interest in the litigation which would impair the prosecutor's obligation to act impartially toward both the State and the accused. [Citation omitted.]" 30 Kan. App. 2d at 897.

In *Cope*, the defendant had said that he was "going to go to war with" Johnson County and that he planned to obtain C-4 explosives and place them around the courthouse. 30 Kan. App. 2d at 894. Cope argued that the Johnson County District Attorney's Office should have been disqualified from prosecuting the criminal threat case against him because the entire office had been included in that criminal threat. Although the district attorney's office was located in the courthouse, Cope had never specifically threatened that office, and other offices were located in the courthouse. We held that the district attorney's office had not been targeted to the extent necessary to create a disqualifying conflict of interest. 30 Kan. App. 2d at 897.

Our case is distinguishable from *Cope* because McGuire's threat specifically targeted S.W. and was not broad enough to encompass the entire office. Nonetheless, *Cope*'s standard applies to this case, as the parties concede. The district court in our case applied the correct legal standard. When ruling on McGuire's motion for disqualification, the district court recited nearly verbatim the applicable legal standard from *Cope*, which we set forth above. The record shows that the trial judge properly applied that standard by looking at the circumstances of the particular case, considering whether a conflict of interest existed, and determining whether McGuire was likely to receive a fair trial. We find no error of law which could constitute an abuse of discretion.

8

Additionally, the facts of this case are not controverted. Thus, the district court could not have abused its discretion by taking judicial action on the basis of a factual error. As a result, the only remaining ground for finding an abuse of discretion is that no reasonable person would have taken the view of the district court. See *Mosher*, 299 Kan. at 3.

We find some guidance in *State v. Camacho*, No. 106,698, 2013 WL 195225 (Kan. App. 2013) (unpublished opinion). Camacho argued that a conflict of interest existed warranting recusal of the entire prosecutor's office because the victims of the crime being prosecuted were the parents of a deputy district attorney who worked in the same office. We held that the district court did not consider proper legal standards in its denial of Camacho's motion for disqualification because it failed to apply the standards set forth in *Cope.* We nonetheless found that Camacho's argument failed on its merits. *Camacho* held that the allegation that a case is being prosecuted by one attorney, when another attorney in that same prosecutor's office is the adult child of the alleged victims in the underlying criminal proceedings, is "insufficient as a matter of law." 2013 WL 195225, at *2. *Camacho* dismissed the defendant's assertion that because one assistant district attorney ordinarily prosecuted in another division and was allegedly overzealous, "there must be a community of interest running rampant in the SCDA's office that has deprived him of fair dealing. Without more, Camacho presents an inference stacked on top of another inference to arrive at a wholly illogical and insufficient conclusion to support disqualification." *Camacho*, 2013 WL 195225, at *2. *Camacho* teaches that a mere coprosecutorial relationship with one whose parents are victims of the crime being prosecuted is not sufficient to impute one prosecutor's conflict of interest onto an entire prosecutorial office.

McGuire's case presents a closer call than *Camacho*, as the fellow prosecutor in this case is the targeted victim of the crime being prosecuted. The key in deciding this

9

appeal is whether McGuire showed that the prosecutor had a significant personal interest in the criminal threat litigation which would impair the prosecutor's obligation to act impartially toward both the State and McGuire. See *Cope*, 30 Kan. App. 2d at 897.

When ruling on McGuire's motion to disqualify SCDA, the district court considered McGuire's previous criminal threat case involving the same victim, case 10 CR 3086. The district court drew the reasonable inference that McGuire had been treated fairly in that case, in part because McGuire had pleaded guilty as charged and had never challenged that case in any manner. The inference of fairness is bolstered by the fact that in that case, SCDA had recommended not only the low grid box number for both counts, but also that the sentences run concurrently.

The district court then considered this case, and properly determined that SCDA was not being overly zealous in alleging that McGuire's threat was sexually motivated because McGuire's letter showed as much on its face, stating: "I want to feel the sexual ecstasy while I watch you die in such a hopeless situation." Although McGuire alleges that SCDA acted unfairly in seeking the maximum sentence and in refusing to accept a 17-month plea deal, the State's request for the high grid box number was reasonable based on McGuire's criminal history score of A. McGuire has not shown that these or other facts relating to the manner in which the prosecutor handled his case made it unlikely that he would receive fair treatment during his criminal proceedings.

McGuire has also failed to show that the prosecutor had a significant personal interest in the litigation. Although McGuire's letter to S.W. is objectively outrageous, it is likely that every prosecutor would feel outrage when reading it, as would a special prosecutor from the Attorney General's Office. See *Robinson*, 143 N.M. at 652 (finding "insufficient evidence that would justify an inference of either an improper interest or personal bias that interfered with their professional judgment that would not likely be

10

shared by every prosecutor in the State"). McGuire has not shown that the prosecutor who handled his case had a special emotional stake in its outcome.

McGuire has not shown any evidence suggesting that S.W. and the prosecutor had any type of special relationship which would have affected the prosecutor's judgment or motivated the prosecutor to handle the case differently than if the victim had not been a fellow prosecutor. The record shows only that the prosecutor in McGuire's criminal threat case and the victim of McGuire's criminal threat are fellow prosecutors in an office that employs 54 prosecutors. McGuire has not shown that the prosecutor had a direct personal interest arising from a financial interest, animosity, kinship, close friendship, or any other relationship with the victim or the defendant which would naturally call into question his objectivity and impartiality. Thus the prosecutor has not been shown to have had a significant personal interest in the litigation, or anything but a public interest in convicting an accused. Accordingly, McGuire has failed to meet his burden of proving that SCDA had a disqualifying conflict of interest. See *Robinson*, 303 Kan. at 90.

The record fails to show a conflict of interest so grave as to render it unlikely that McGuire would receive fair treatment during his criminal proceedings. A reasonable person could easily agree with the district court's finding that McGuire failed to prove the existence of a disqualifying conflict of interest. Therefore, we find no abuse of discretion.

Affirmed.

11